NO. 07-01-0326-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

MAY 28, 2002

_____


TED WOOD, APPELLANT

V.

PATTILOU DAWKINS, APPELLEE

_____

FROM THE 47TH DISTRICT COURT OF RANDALL COUNTY;

NO. 48,492-A; HONORABLE JOHN T. FORBIS, JUDGE

_____

Before BOYD, C.J., and REAVIS and JOHNSON, JJ.

Appellant Ted Wood (Wood) appeals from an ordering granting a take-nothing summary judgment in favor of appellee Pattilou Dawkins (Dawkins) in an action for libel brought against her as a result of a letter she wrote to two newspapers. For the reasons set forth, we affirm the judgment of the trial court.

Dawkins filed a traditional motion for summary judgment under Rule 166a(c) of the Rules of Civil Procedure on the basis that the statements made by her were true, constituted her opinion, and were made in good faith without malice. She also filed a no-evidence motion for summary judgment under Rule 166a(i) on the basis that there was no evidence to show she acted with malice. In his first issue, Wood argues that we should focus on the specific language that is alleged to be defamatory. In his second issue, he contends that summary judgment was improper because the statement is one of fact and he presented evidence that the statement was false, made with malice, and it concerned him.

In reviewing a traditional summary judgment, the movant must show that there is no genuine issue of material fact. *Nixon v. Mr. Property Management Co., Inc.,* 690 S.W.2d 546, 548-49 (Tex. 1985). We take the evidence favorable to the non-movant as true and indulge every reasonable inference in favor of the non-movant. *Id.* A defendant must disprove as a matter of law one of the essential elements of each cause of action or establish one or more defenses as a matter of law. *Randall's Food Markets, Inc. v. Johnson,* 891 S.W.2d 640, 644 (Tex. 1995).

In reviewing a no-evidence motion for summary judgment, we ascertain if the non-movant produced more than a scintilla of probative evidence to raise a fact issue on the material questions presented. *Kimber v. Sideris*, 8 S.W.3d 672, 675-76 (Tex.App.--Amarillo 1999, no pet.). When, as in the case before us, the trial court does not state the

2

grounds on which the summary judgment motion is granted, we must affirm it if any ground stated in the motion is meritorious. *Carr v. Brasher,* 776 S.W.2d 567, 569 (Tex. 1989).

Wood, who was Randall County Judge and a member of the Randall County Commission at the time of publication of the alleged libel, complains of a letter to the editor published in The Canyon News editorial opinion page on October 24, 1999.[1] Although the letter contains six paragraphs, it is the first two paragraphs which he contends are libelous. Nevertheless, because Dawkins argues that the first two paragraphs must be viewed in the context of the entire letter as a whole, we will set forth the letter in its entirety:

'Extravagant piece of stupidity'[2]

Here we go again. The Randall County Commissioners and the shifty judge are into subterfuge big time this time!

First, let's talk about the jail. There was not an engineer or architect who believed the new jail could be built for $13 million and the court was told this fact. But since the previous bond issue for a jail had failed and the commissioners court felt a $16 million bond issue would also fail, the solution, they believed, was to lower the amount of the bond issue and worry about the shortfall later. So now they are issuing certificates of obligation. Thank goodness it's only for $3 million. The point is they knew from the gitgo that $13 million wasn't enough!

And now in today's paper I see we're going to renovate and restore the 1909 Courthouse! But we're not going to call it that. The overt name is "facilities expansion." Please, please, when will the Commissioners Court realize that the citizens of Randall County do not want to restore the old courthouse? How many times has this issue been defeated? The north annex is a fine building and the current jail, when empty, will provide more

---

[1]The letter was also sent to the Amarillo Daily News, but did not appear in the newspaper.

[2]The title was apparently supplied by the newspaper.

room.  Until the new jail is finished, the Norwest building provides enough room.  If more space must be had now, then lease something for the time being.

The point I wish to make, however, is that $8.5 million will not begin to cover the cost of doing what they plan on doing and what the county does not need or want!  "Skip" Huskey's quote was downright scary.  Putting the money "as far as it will go" is tantamount to my mother's saying, "There's no such thing as being a little pregnant."  The minute we put another dime in the old building, the state will require that we not only finish what we started, but that we agree to their many stipulations.  And even if we do receive funds from the state, $10 million for just one courthouse is probably a more realistic figure.  "Pressing" the historical commission to fund the $3 million is laughable.  When was the last time a state agency was pressured for money?

And when Commissioner Craig Gualtiere says, "This is not a courthouse issue," he's either lying or is terribly naive.  Believe me, the folks in Randall County are not dumb.  They see it as it is.  The $8.5 million bond issue is for renovating the 1909 courthouse, and should it pass, we will discover halfway through the project, probably after the north annex has been demolished, that the real cost of "facilities expansion" is going to be closer to $15 million.

Did Commissioner Gene Parker do a little survey before he voted on this terribly extravagant piece of stupidity?  I'm sure that as the time progresses, the devil will be in the details, and the voters of Randall County will defeat such a senseless waste of money.

Pattilou Dawkins
Amarillo


Wood also alleges Dawkins reaffirmed these statements on KGNC radio.


Initially, Wood posits that, in analyzing the alleged defamatory statement, we should

focus on the first two paragraphs of the letter, because to do otherwise would yield a

4

completely different result.[3]  He asserts that the first two paragraphs should be taken as a whole in and of themselves, although he recognizes that to determine whether a particular statement within a publication is defamatory, the publication as a whole must be considered.  This is necessary, he reasons, because the sentences in those two paragraphs in combination create a false impression, even if individually they do not do so.

An allegedly defamatory statement must be construed as a whole in light of the surrounding circumstances based upon how a person of ordinary intelligence would perceive it.  *Turner v. KTRK Television, Inc.,* 38 S.W.3d 103, 114 (Tex. 2000); *Musser v. Smith Protective Services, Inc.,* 723 S.W.2d 653, 655 (Tex. 1987).  A publication can convey a defamatory meaning by omitting or juxtaposing facts, even though each individual statement considered alone might be literally true or non-defamatory.  *Turner,* 38 S.W.3d at 114.  This is so because a reasonable person's interpretation depends on the entirety of a publication and not individual statements. *Id.* at 115.  Thus, although a defendant cannot be held liable for presenting a true account of events regardless of what someone might conclude from that account, the same does not hold true when there is an omission of material facts, or a misleading presentation or juxtaposition of true facts.  *Id.*  A person claiming defamation based on a publication as a whole must prove the publication's "gist" is false and defamatory.  *Id.*

---

[3]Although couched as Wood's first issue, this is not really a claim of error on the part of the trial court which we are being asked to review, but really is a rule of analysis being urged on us by Wood.

Wood argues that the gist of the defamatory statement is that "Wood and the other members of the Randall County Commissioners Court knew from the new jail project's very beginning that the jail would cost $16 million but purposely represented the project's cost as being $13 million in order to pass a bond issue."[4] Dawkins focuses on the gist of the letter which she contends is that the Randall County Commissioners had misled the voters on the cost of the new jail and were therefore probably misleading voters on the cost of renovating the old courthouse.

We agree that we should not make our determination based on an examination of each individual sentence in the first two paragraphs to see if each statement standing alone is defamatory, but must examine the two paragraphs together. However, neither may the remainder of the letter be completely ignored because a reasonable person's interpretation of a publication may depend on the context in which the alleged defamatory statement appears (*i.e.*, the first two paragraphs as alleged by Wood). Therefore, it is within that framework that we would conduct our examination of the statement in determining whether it is defamatory.

However, even if the statement was found to be defamatory, to recover for defamation, a public figure or public official must prove that the defamatory statement was made with actual malice. *Huckabee v. Time Warner Entertainment Co.*, 19 S.W.3d 413, 420 (Tex. 2000). To establish malice, a plaintiff must prove that the statement was made

---

[4]Wood does not complain of the use of the words "shifty" and "subterfuge."

6

"with knowledge that it was false or with reckless disregard of whether it was false or not." *New York Times v. Sullivan Co.*, 376 U.S. 254, 279-80, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). Reckless disregard is shown by sufficient evidence to permit the conclusion that the author entertained serious doubts as to the truth. *St. Amant v. Thompson*, 390 U.S. 727, 731, 88 S.Ct. 1323, 20 L.Ed.2d 262 (1968). Neither party disputes that Wood is a public figure.

In support of her motion for summary judgment, Dawkins submitted an affidavit stating that she bore no malice or ill will toward Wood and that everything in her letter was either her sincere opinion or what she believed in good faith to be true and was fully justified by her knowledge at the time. She further averred that she had no serious doubts that the statements she made were true and did not believe any of the statements were false. Additionally, she stated that based on her experience as an owner and developer of commercial real estate, she has found that "building construction almost always costs more than the first estimate - especially if the first estimate does not include plans and bids for construction." She relied on her knowledge that the estimate being used by the Randall County Commission did not include costs for certain items and was not based on actual architectural drawing. Additionally, she relied on public statements by Wood prior to the bond election that the cost of the facility would be $20 million.

Wood contends that, because Dawkins is an interested witness, her affidavit may negate malice as a matter of law only if it is clear, positive, direct, otherwise credible and free from contradictions and inconsistencies and able to be readily controverted. Wood

7

is correct with respect to Dawkins's traditional motion for summary judgment. *Huckabee,* 19 S.W.3d at 424. However, Dawkins also filed a no-evidence motion for summary judgment with respect to malice, which places the burden on Wood to produce more than a scintilla of probative evidence raising a fact issue as to the existence of malice.[5] Nevertheless, Wood contends that Dawkins has failed to establish the absence of malice as a matter of law, he has controverted her evidence of an absence of malice, and he has presented summary judgment evidence that Dawkins acted with actual malice.

As to evidence that Dawkins acted with malice, Wood specifically points to a citizens committee's report, Dawkins's affidavit and deposition testimony, and the affidavit of Brian Barrett. The citizens committee was appointed to study and make recommendations with respect to the construction of a new Randall County Jail. Dawkins was a member of that committee. The committee's report was provided to the Randall County Commission on December 18, 1997, and recommended the construction of a jail. It was signed by Dawkins as a member. The report showed an estimated cost to construct the jail of $12.46 million. Wood contends this shows Dawkins's statement that no architect or engineer believed the jail could be built for $13 million was false because the report was based on an architect's estimate.

---

[5]Both parties appear to argue only the merits of the traditional motion for summary judgment in their briefs.

However, it is undisputed that this was an estimate only and that it was not based on actual plans drawn up by the architects[6] and was not shown to include costs associated with compliance on the Texas Commission on Jail Standards. It also did not include costs associated with landscaping, furnishings, and ancillary buildings required by the sheriff's department, for which those items had been left blank in the report. Thus, there is nothing to show that the costs associated with construction of the jail would only be $12.46 million and the fact that Dawkins might have been wrong in her belief that those additional costs would have been more than $13 million or that there might have been an architect or engineer who actually believed the total cost would be less than $13 million is not evidence of malice. It must be shown that Dawkins entertained doubts about her assertion as to what the architects and engineers believed. *See Colson v. Grohman*, 24 S.W.3d 414, 422 (Tex.App.--Houston [1st Dist.] 2000, pet. denied).

Wood argues that even if the committee report did not show a knowledge of falsity with respect to what other engineers or architects believed, it still shows a knowledge of falsity with respect to her statement that, prior to May 1998, Wood knew that the cost to construct the jail would be $16 million. This is particularly so, Wood contends, in light of the fact that Dawkins's affidavit and deposition testimony shows that she obtained the $16 million figure from a newspaper article published on October 13, 1999, which reported a $3 million increase in the cost of the jail. Dawkins further testified in her deposition that at

[6]In fact, it is undisputed that, at one of the Randall County Commission meetings, Wood declined to second a motion of one of the other commissioners which would have required the commission to obtain actual plans and specifications before proposing a bond election.

9

the time of the May 1998 bond election, Wood and the other commissioners had no idea what the jail was going to cost. In any event, Wood asserts, this evidence is sufficient to raise a fact issue which the jury should determine.

However, it is also undisputed that Wood made statements publicly before the bond election that the jail would be a $20 million project. Although Wood claims he was including financing in those costs, which may be true, that distinction was either not made at all or did not delineate what portion of the $20 million was made up of financing costs, and thus Dawkins could well have believed that Wood knew prior to the bond election that the cost would be higher than $13 million. She also knew by the time of her letter that the costs were in fact at least $16 million. Assuming, without deciding, that the first two paragraphs of Dawkins's letter gave a false impression to the public that Wood knew the cost of the jail would actually be $16 million at the time of the bond election, there is still no evidence that Dawkins did not believe that statement to be true. The presentation of facts may be negligently misleading, but does not establish actual malice unless there is evidence that the author knew or strongly suspected that the publication as a whole was misleading. *Turner*, 38 S.W.3d at 120. Further, the falsity of a statement alone or a failure to investigate the truth does not show malice. *El Paso Times, Inc. v. Trexler,* 447 S.W.2d 403, 406 (Tex. 1969); *Freedom Communications, Inc. v. Brand*, 907 S.W.2d 614, 620, 622 (Tex.App.--Corpus Christi 1995, no writ); *Johnson v. Southwestern Newspapers Corp.,* 855 S.W.2d 182, 188 (Tex.App.--Amarillo 1993, writ denied).

10

Wood additionally argues that the affidavit of Brian Barrett raises proof of malice. Barrett also served on the citizens committee, and he stated that he believed the estimated cost of $12.46 million to be conservative. Further, when he took office as a Randall County Commissioner on January 1, 1999, he did not anticipate that it would be necessary to borrow any more than $12.46 million to build a jail. However, in September 1999, he was informed by one of the architects that the cost to build the jail would be about $16.2 million, which was the first time he learned the county would need to borrow more money. Even accepting all of these facts as true, they do not raise a fact issue as to malice. The fact that Dawkins and Barrett may have differed in their beliefs as to the cost of the new jail at the time of the committee report, the 1998 bond election, or even during the first part of 1999 does not constitute evidence of malice. *Gaylord Broadcasting Co., L.P. v. Francis,* 7 S.W.3d 279, 284-85 (Tex.App.--Dallas 1999, pet. denied); *American Broadcasting Companies, Inc. v. Gill*, 6 S.W.3d 19, 37 (Tex.App.--San Antonio 1999, pet. denied), *overruled on other grounds by Turner v. KTRK Television, Inc.,* 38 S.W.3d 103 (Tex. 2000).

Dawkins stated in her affidavit that she based her statements on (1) her past experience with respect to construction costs, (2) her knowledge that certain costs were not included in the estimate, (3) her knowledge the estimate was not based on actual architectural drawings, (4) her understanding that the jail commission had not approved any plans, (5) statements made by Wood prior to the bond election that the cost of the jail facility would be $20 million, and (6) a newspaper article in 1999 that the costs had

11

increased to $16 million.   These statements show the basis of Dawkins's belief and, even if wrong, we believe her affidavit is sufficient to negate the element of malice in the absence of controverting evidence. Although the parties quibble over what expenses were actually included at various times by the other party when reference was made to the cost to construct the new jail, those differences in understanding or meaning do not show that Dawkins did not have a reasonable basis for her belief.

Having found that Dawkins's summary judgment may be sustained on the basis that malice does not exist, it is not necessary for us to address Wood's contentions as to the other elements of defamation.   Accordingly, we affirm the judgment.


John T. Boyd
Chief Justice

Publish.