ACCEPTED
13-15-00205-CV
THIRTEENTH COURT OF APPEALS
CORPUS CHRISTI, TEXAS
12/18/2015 3:27:40 PM
Dorian E. Ramirez
CLERK

NO. 13-15-00205-CV

FILED IN
13th COURT OF APPEALS
CORPUS CHRISTI/EDINBURG, TEXAS
12/18/2015 3:27:40 PM
DORIAN E. RAMIREZ
Clerk

IN THE COURT OF APPEALS
FOR THE THIRTEENTH COURT OF APPEALS DISTRICT OF TEXAS

JOEL FLORES, INDIVIDUALLY AND IN A REPRESENTATIVE CAPACITY AND
CRISELDA FLORES, INDIVIDUALLY AND IN A REPRESENTATIVE CAPACITY,
*Appellants*,

v.

GONZÁLEZ & ASSOCIATES LAW FIRM, LTD.,
*Appellee*.

On Appeal from Cause No. C-4738-13-D,
In the 206th Judicial District Court, Hidalgo County, Texas,
Honorable Rose Guerra Reyna, Presiding

## APPELLEE'S BRIEF

Mr. Jason Davis
State Bar No. 00793592
Mr. Santos Vargas
State Bar No. 24047026
DAVIS & SANTOS
ATTORNEYS & COUNSELORS, P.C.
The Weston Centre
112 E. Pecan Street, Suite 900
San Antonio, Texas 78205
(210) 853-5882
(210) 200-8395 (fax)
E-Mail: *jdavis@dslawpc.com*

*Attorneys for Appellee,*
*González & Associates Law Firm, Ltd.*

# IDENTITIES OF PARTIES AND COUNSEL

## APPELLANTS

Joel Flores, Individually and in a Representative Capacity, and Criselda Flores, Individually and in a Representative Capacity

### APPELLANTS' COUNSEL AT TRIAL AND ON APPEAL
Jaime Peña
State Bar No. 90001988
PENA GARCIA GUERRERO, PLLC
900 Kerria Avenue
McAllen, Texas 78501
(956) 948-2221– phone
(956) 422-6346
jpena@pgglex.com

### APPELLANTS' COUNSEL ON APPEAL
Beth Watkins
State Bar No. 24037675
Shannon K. Dunn
State Bar No. 24074162
LAW OFFICE OF BETH WATKINS
926 Chulie Drive
San Antonio, Texas 78216
(210) 225-6666– phone
(210) 225-2300– fax
Beth.Watkins@WatkinsAppeals.com
Shannon.Dunn@WatkinsAppeals.com

APPELLEE

Gonzalez and Associates Law Firm, Ltd.

APPELLEES' COUNSEL AT TRIAL AND ON APPEAL
Jason Davis
State Bar No. 00793592
Santos Vargas
State Bar No. 24047026
DAVIS & SANTOS, ATTORNEYS & COUNSELORS, P.C.
The Weston Centre
112 East Pecan Street, Suite 900
San Antonio, Texas 78205
(210) 853-5882– phone
(210) 200-8395– fax
jdavis@dslawpc.com
svargas@dslawpc.com

Fernando G. Mancias
State Bar No. 12891300
LAW OFFICE OF FERNANDO G. MANCIAS
4428 South McColl Road
Edinburg, Texas 78539
(956) 686-0385– phone
(965) 686-0787– fax
Fernando@fernandomanciaslaw.com

Robert "Bob" Guerra
State Bar No. 08578560
THORNTON, BIECHLIN, SEGRATO, REYNOLDS & GUERRA, LC
418 East Dove Avenue
McAllen, Texas 78504
(956) 630-3080– phone
(956) 630-0189– fax
rguerra@thorntonfirm.com

# TABLE OF CONTENTS

Page

IDENTITY OF PARTIES AND COUNSEL ................................................i

TABLE OF CONTENTS ..................................................................... iii

INDEX OF AUTHORITIES ..................................................................vi

STATEMENT REGARDING ORAL ARGUMENT................................xiv

ISSUES PRESENTED ..........................................................................xv

INTRODUCTION ................................................................................... 1

STATEMENT OF FACTS ........................................................................3

I.      Flores Hires González...................................................................3

II.     González Diligently and Effectively Represents the Flores. .......6

III.    The Flores Discharge González to Avoid Paying the Agreed Fee. ...............................................................................................9

IV.    The Flores Sue González in an Attempt to Pay Nothing...........10

V.     The Flores for the Second Time Accept the Rule 11 Settlement Negotiated By González ............................................................14

VI.    After Losing On All Their Tort Claims, the Flores Change Tactics and Attempt to Belatedly Plead Breach of Contract..................15

VII.   The Flores Make Judicial Admissions Abandoning the "Good Cause" Defense and Then Ratify the González Contract by Tendering Part of the Fee to González ......................................18

SUMMARY OF THE ARGUMENT .......................................................23

ARGUMENT AND AUTHORITIES ........................................................27

I.      The Trial Court Properly Granted Summary Judgment on The
        Flores' Fiduciary Duty Claim.................................................27

        A. Standard of Review...................................................28

        B. González was Entitled to Summary Judgment because there
           was no Breach of Fiduciary Duty as a Matter of Law..........29

           i. *The Flores' allegations were not supported by personal
           knowledge or other competent evidence. .............................*30

           ii. *The Flores' allegations were nonsensical, immaterial, and
           insufficient to support a breach of fiduciary duty claim* ......32

           iii. *The Flores also failed to show that they were harmed or
           that González benefitted from any alleged breach.*..............38

        C. The Presumption of Unfairness does not Apply. ..................42

II.     The Trial Court did not Abuse its Discretion by Excluding
        Evidence of Good Cause............................................................48

        A. Standard of Review. ..............................................48

        B. The Trial Court Properly Excluded Evidence of Good Cause
           Because the Flores Tendered a 25% fee on the Same Contract
           they Sought to Avoid..............................................48

        C. The Trial Court Properly Excluded Evidence of Good Cause
           Because of the Flores' Repeated Failure to Comply with the
           Pleading Rules and Deadlines.........................................49

           i. *Texas Rule of Civil Procedure 94 requires that avoidance
           defenses be specifically plead, and the Flores failed to do so*
           ............................................................49

ii. *The Flores were also required to specifically deny any conditions precedent they believed González had not performed, and they failed to do so.* ......................................50

iii. *The Flores repeatedly failed to comply with the Trial Court's deadlines*................................................................51

D. The Trial Court Properly Denied Leave for the Flores to Amend their Pleadings. ........................................................52

i. *The Flores' untimely amendments were prejudicial on their face.* ..............................................................................52

ii. *The Flores' untimely amendments would have also caused surprise and prejudice.* ........................................................55

E. As a Separate and Independent Basis to Affirm the Trial Court's Ruling, the Judgment Rendered did not Turn on the Excluded Evidence. ................................................................61

III. The Trial Court did not Abuse its Discretion by Awarding González its Attorney's Fees. ........................................................64

A. Standard of Review. ................................................................64

B. The Trial Court's Award of Attorney's Fees was not an Abuse of Discretion..........................................................................65

C. González Satisfied the *Arthur Andersen* Factors.................69

PRAYER............................................................................................75

CERTIFICATE OF SERVICE.............................................................766

CERTIFICATE OF COMPLIANCE .......................................................77

# INDEX OF AUTHORITIES

CASES                                                                    Page

*7979 Airport Garage, L.L.C. v. Dollar Rent a Car Sys., Inc.,*
  245 S.W.3d 488
(Tex. App.—Houston [14th Dist.] 2007, pet. denied) ...................... 66, 69


*Adame v. Law Office Of Allison & Huerta,*
  No. 13-04-670-CV, 2008 WL 2151454
(Tex. App.—Corpus Christi May 22, 2008, pet. denied) ............... 40, 41

*Air Products and Chemicals, Inc. v. Odfjell Seachem A/S,*
  305 S.W.3d 87
(Tex. App.—Houston [1st Dist.] 2009, no pet.) .................................. 59

*Am. Tobacco Co. v. Grinnell,*
  951 S.W.2d 420
(Tex. 1997) ................................................................................. 29, 36

*AMX Enter's., L.L.P. v. Master Realty Corp.,*
  283 S.W.3d 506
(Tex. App.—Fort Worth 2009, no pet.) ......................................... 64, 69

*Arthur Andersen & Co. v. Perry Equip. Corp.,*
  945 S.W.2d 812
(Tex. 1997) ........................................... 27, 69, 70, 71, 72, 75

*Beck v. Law Offices of Edwin J. (Ted) Terry, Jr., P.C.,*
  284 S.W.3d 416
(Tex. App.—Austin 2009, no pet.) .................................................. 35

*Bexar Cnty. v. Deputy Sheriffs Ass'n of Bexar Cnty.,*
  429 S.W.3d 673
  (Tex. App.—San Antonio 2014, no pet.)...............................................65

*Bocquet v. Herring,*
  972 S.W.2d 19
  (Tex. 1998).............................................................................................65

*Bright v. Addison,*
  171 S.W.3d 588
  (Tex. App.—Dallas 2005, pet denied) ................................................46

*Burrow v. Arce,*
  997 S.W.2d 229
  (Tex. 1999)............................................................36, 40, 41, 42

*Carr v. Brasher,*
  776 S.W.2d 567
  (Tex. 1989).............................................................................................28

*City of Brownsville v. Alvarado,*
  897 S.W.2d 750
  (Tex. 1995).............................................................................................48

*Coastal Transp. Co. v. Crown Cent. Petroleum Corp.,*
  136 S.W.3d 227
  (Tex. 2004).............................................................................................74

*Cole v. Plummer,*
  559 S.W.2d 87
  (Tex. Civ. App.—Eastland 1977, writ ref'd n.r.e.).........................46, 47

*Comm'rs Court of Titus Cnty. v. Agan,*
940 S.W.2d 77
(Tex. 1997)..................................................................................64

*Dow Chem. Co. v. Francis,*
46 S.W.3d 237
(Tex. 2001) ..................................................................................28

*Dunnagan v. Watson,*
204 S.W.3d 30
(Tex. App.—Fort Worth 2006, pet. denied) ..................53, 55, 57, 59, 60

*EMC Mortg. Corp. v. Davis,*
167 S.W.3d 406
(Tex. App.—Austin 2005, pet. denied) ................................65, 69, 70, 75

*ForScan Corp. v. Dresser Indus., Inc.*
789 S.W.2d 389
(Tex. App—Houston [14th Dist.] 1990, writ denied) ..........................51

*Ford Motor Co. v. Ridgway,*
135 S.W.3d 598
(Tex. 2004)..................................................................................29

*Gee v. Liberty Mut. Fire Ins. Co.,*
765 S.W.2d 394
(Tex. 1989)..................................................................................48

*Graham Mortg. Corp. v Hall,*
307 S.W.3d 472
(Tex. App.—Dallas 2010, no pet.)................................................30, 39

viii

*Greathouse v. Charter Nat'l Bank-Sw.,*
  851 S.W.2d 173
  (Tex. 1992) ....................................................................50, 51, 62

*Greenhalgh v. Serv. Lloyds Ins. Co.,*
  787 S.W.2d 938
  (Tex. 1990) ........................................................................52, 53

*Hajdik v. Wingate,*
  753 S.W.2d 199
  (Tex. App.—Hous. [1st Dist.] 1988),
  *aff'd,* 795 S.W.2d 717 (Tex. 1990).......................55, 56, 59, 60

*Hart v. Moore,*
  952 S.W.2d 90
  (Tex. App.—Amarillo, 1997, pet. denied) ...............................52

*Holy Cross Church of God in Christ v. Wolf,*
  44 S.W.3d 562
  (Tex. 2001)................................................................................62

*Horizon/CMS Healthcare Corp. v. Auld,*
  34 S.W.3d 887
  (Tex. 2000) ...............................................................................62

*Howell v. Kelly,*
  534 S.W.2d 737
  (Tex. Civ. App.—Houston [1st Dist.] 1976, no writ) ............50

*In re Estate of Miller,*
  446 S.W.3d 445
  (Tex. App.—Tyler 2014, no pet.) .........................................43

*Jackson Law Office, P.C. v. Chappell,*
  37 S.W.3d 15
  (Tex. App.—Tyler 2000, pet. denied) ................................................. 47

*JNS Enter., Inc. v. Dixie Demolition, LLC,*
  430 S.W.3d 444
  (Tex. App.—Austin 2013, no pet.) ..................................................... 67

*Jones v. Hyman,*
  107 S.W.3d 830
  (Tex. App.—Dallas 2003, no pet.) ................................................. 28, 47

*Kinzbach Tool Co. v. Corbett-Wallace Corp.,*
  160 S.W.2d 509
  (Tex. 1942) ...................................................................................... 30

*Lane Bank Equip. Co. v. Smith S. Equip., Inc.,*
  10 S.W.3d 308
  (Tex. 2000) ...................................................................................... 67

*Lindley v. McKnight,*
  349 S.W.3d 113
  (Tex. App.—Fort Worth 2011, no pet.) ........................................... 29, 48

*Llanes v. Davila,*
  133 S.W.3d 635
  (Tex. App.—Corpus Christi 2003, pet. denied) .................................... 64

*Mackey v. U.P. Enters., Inc.*
  935 S.W.2d 446
  (Tex. App.—Tyler 1996, no writ) ....................................................... 51

*MAN Engines & Components, Inc. v. Shows,*
434 S.W.3d 132
(Tex. 2014) ........................................................... 49, 50

*Mantri v. Bergman,*
153 S.W.3d 715
(Tex. App.—Dallas 2005, pet. denied) ........................................... 66, 67

*Mapco, Inc. v. Carter,*
817 S.W.2d 686
(Tex. 1991) ...................................................................... 62

*Mims-Brown v. Brown,*
428 S.W.3d 366
(Tex. App.—Dallas 2014, no pet.) .......................................... 43, 44, 45

*Perez v. Kirk & Carrigan,*
822 S.W.2d 261
(Tex. App.—Corpus Christi 1991, writ denied) ................................... 40

*Petco Animal Supplies, Inc. v. Schuster,*
144 S.W.3d 554
(Tex. App.—Austin 2004, no pet.) ............................................... 64, 70

*Ragsdale v. Progressive Voters League,*
801 S.W.2d 880
(Tex. 1990) .............................................................. 64, 65, 69, 70

*Siders v. State,*
970 S.W.2d 189
(Tex. App.—Dallas 1998, pet. denied) ............................................. 28

*State Fair of Tex. v. Seay,*
  98 S.W.2d 232
  (Tex. Civ. App.—Fort Worth 1936, writ dism'd) ........................... 49, 63

*Stevenson v. Koutzarov,*
  795 S.W.2d 313
  (Tex. App.—Houston [1st Dist.] 1990, writ denied) ........................... 56

*Tanox, Inc. v. Akin, Gump, Strauss, Hauer & Feld, L.L.P.,*
  105 S.W.3d 244
  (Tex. App.—Houston [14th Dist.] 2003, pet. denied) ......................... 45

*Tony Gullo Motors I, L.P. v. Chapa,*
  212 S.W.3d 299
  (Tex. 2006) ............................................................... 66, 67, 69

*Ward v. Emmett,*
  37 S.W.3d 500
  (Tex. App.—San Antonio 2001, no pet.) ............................................. 30

*Wein v. Sherman,*
  No. 03-10-00499-CV, 2013 WL 4516013
  (Tex. App.—Austin Aug. 23, 2013, no pet.) ......................................... 67

*White v. Sullins,*
  917 S.W.2d 158
  (Tex. App.—Beaumont 1996, writ denied) ......................................... 52

*Wood v. Dawkins,*
  85 S.W.3d 312
  (Tex. App.—Amarillo 2002, pet. denied) ............................................. 28

## RULES

Tex. R. Civ. P. 54 ....................................................................50, 51, 62

Tex. R. Civ. P. 63 .........................................................................51, 52

Tex. R. Civ. P. 94 .....................................................................49, 50, 62

Tex. R. Civ. P. 166a(c) ..................................................................29, 36

Tex. R. Civ. P. 166a(i) ........................................................................29

# STATEMENT REGARDING ORAL ARGUMENT

Appellee does not believe that oral argument would significantly aid the Court in its decision. The record reflects that the facts relevant to this appeal are almost entirely uncontroverted. In addition, the legal arguments are straight-forward and adequately set forth in the parties' respective briefs. However, should the Court decide to grant Appellants' request for oral argument, Appellee requests the opportunity to also present oral argument.

# ISSUES PRESENTED

<u>Reply to Issue 1</u>: The experienced Trial Court granted Appellee's no-evidence and traditional motions for summary judgment as to all of Appellants' affirmative claims.  <u>Should this Court affirm the Trial Court's rulings where Appellants failed to present more than a scintilla of evidence on multiple elements of their breach of fiduciary duty claim, and where the Appellants' allegations are insufficient to support a breach of fiduciary duty claim as a matter of law?</u>

<u>Reply to Issue 2</u>:  Appellants failed to timely plead the avoidance defense of "good cause" and failed to specifically deny any conditions precedent. <u>Should this Court affirm the Trial Court's exclusion of evidence of "good cause" where Appellants: (1) repeatedly failed to comply with the pleading rules and deadlines; (2) affirmatively represented that allegations regarding "good cause" would not be addressed during the trial; and (3) where Appellants actually tendered to Appellee a portion of the fee on the same contract they later sought to avoid?</u>

<u>Reply to Issue 3</u>:  The Trial Court heard expert testimony on attorney's fees from Appellee's trial counsel, as well as its expert witness.  During the trial, Appellants failed to offer any controverting expert testimony or other evidence to rebut the attorney fee testimony offered by Appellee. <u>Should this Court affirm the Trial Court's award of attorney's fees where Appellee's uncontroverted expert testimony as to each of the *Arthur Andersen* factors supported the Trial Court's attorney's fee award?</u>

xv

TO THE HONORABLE COURT OF APPEALS:

González & Associates Law Firm, Ltd., files this Appellee's Brief respectfully requesting that the Court affirm the rulings and judgments issued by the Honorable Rose Guerra Reyna, Judge of the 206th Judicial District of Hidalgo County, Texas.

## INTRODUCTION

Appellants Joel and Criselda Flores, individually and in a representative capacity (the "Flores") hired Appellee González & Associates Law Firm, Ltd. ("González"), an accomplished trial law firm, to represent them in a wrongful death action. González zealously represented the Flores and ultimately negotiated a favorable Rule 11 settlement agreement for $6,250,000 and a formal apology provided to the Flores in a moving ceremony at St. Frances Xavier Cabrini Catholic Church ("St. Frances").

Ms. Criselda Flores, also an experienced attorney, approved and signed the Rule 11 settlement agreement, and had her husband do the same. Despite accepting the benefits of the settlement, the Flores later decided not to pay González the agreed 31% contingency fee. In an effort to avoid their clear contractual obligations, the Flores asserted breach of

1

fiduciary duty and other tort claims against González. In turn, González sought to enforce the firm's contract and settlement agreement via a breach of contract action. After extensive summary judgment briefing, the experienced District Judge ruled in González's favor and granted summary judgment against the Flores on all their affirmative claims. After a bench trial, the Court entered a judgment in González's favor on its contract claims, and awarded González attorney's fees incurred in the successful effort to enforce the contract.

The Flores now appeal these decisions. Despite the emotional rhetoric in Appellants' Brief, the legal issues before the Court are straight-forward. The Flores simply do not want to pay their lawyer. Undermining all of the Flores' arguments are two simple and undisputed facts: (1) the Flores have embraced and accepted the settlement that González obtained for them; and (2) the Flores have now tendered a 25% fee under the Contract with González (and yet in this appeal seek to avoid the same Contract). The Flores' complaints are thus factually and legally flawed and as a result, the Trial Court's rulings should be affirmed in all respects.

## STATEMENT OF FACTS[1]

### I.    FLORES HIRES GONZÁLEZ.

In July of 2013, the Flores entered into a Contract for Legal Services with González (the "Contract"). CR1 852-858. Ms. Flores, herself an experienced attorney, had been referred to González by Ms. Flores' friend, another McAllen attorney, Nereida Lopez-Singleterry ("Ms. Lopez"). CR1 852-858; CR2 152:3-153:4.

Ms. Flores negotiated the terms of the Contract directly with González. CR1 852-858. In addition to being a licensed attorney, Ms. Flores had prior experience negotiating a contingency fee contract with the Watts firm in a different case. CR1 662; CR1 852-855.

During her discussions with González, Ms. Flores shrewdly negotiated a fee lower than the firm's standard 40% fee, insisting that she essentially be treated as a "referring attorney" in her own case. CR1 852-855; CR3 102:11-103:24. The final Contract provided: (a) no

---

[1] The five-volume Clerk's Record will be cited by page number as "CR[volume number]  [page number]." The twelve-volume Reporter's Record will be cited by volume and page number as "RR[volume number] [page number]."

3

contingent fee if the case settled prior to August 1, 2013;[2] (b) a 25%

contingent fee if the case settled within 60 days from when the Contract

was executed; or (c) a 31% contingent fee if the case settled after 60 days

from when the Contract was executed. CR1 857-858. Under the Contract,

González would also be entitled to collect its expenses. *Id.* González

agreed to investigate and prosecute claims against McAllen Country Club,

Inc. ("MCC"). CR1 852-858.

During their first meeting in July of 2013, Ms. Lopez explained that

as a courtesy to the Flores, she had briefly discussed the Flores' claim over

the phone with MCC's counsel, Mr. John Griffith. CR1 211; CR2 70; CR2

153:11-155:14; CR2 158:11-161:8. Ms. Lopez explained that Mr. Griffith

represented that there was no reason for the Flores to hire a lawyer "since

a simple phone call by them would be enough to collect policy limits." *Id.*;

CR2 74. González recommended that the Flores send Mr. Griffith a letter

verifying whether MCC was indeed willing to pay policy limits prior to suit

and, if so, González agreed that it would not receive a fee. *Id.*; CR2 163:6-

---

[2] Ms. Flores testified that Mr. González suggested the initial time-bracket during which González would recover no contingent fee (i.e., if MCC had immediately agreed to settle the case). CR3 103:14-24.

4

164:10; CR2 176:5-22; CR1 852-855; CR3 103:14-24. Nevertheless, if that happened, González offered to draft settlement documents at no cost to the Flores. CR2 176:5-22. González then drafted a letter on Ms. Lopez' letterhead, to determine whether MCC was willing to offer policy limits. CR2 74.

However, MCC did not make that offer. CR2 85. Instead, on July 26, 2013, Mr. Griffith responded with a letter indicating that he did not have authority to settle the case for policy limits, and shamelessly accused Ms. Lopez of misrepresenting their prior conversation: "Your conscious misstating and overstating of my communication to you is completely improper." *Id.* Ms. Lopez e-mailed Mr. Griffith's response to Ms. Flores on July 29, 2013:

> From: WILLIAMSON LOPEZ <williamsonlopezlaw@gmail.com>
> Date: July 29, 2013 at 10:26:09 AM CDT
> To: lopeznereida15@gmail.com, crinconflores@yahoo.com, roxanna@jaglawfirm.com
> Subject: Fwd: MyFax message from "956 971 9451" - 2 page(s), Caller-ID: 1-956-618-3625
>
> Re: Joel Flores and Criselda Flores, Individually and as Next Friends of Joel Flores, Jr. v. McAllen Country Club
>
> Attached is the pdf image of the fax requested.

CR2 82.

## II. GONZÁLEZ DILIGENTLY AND EFFECTIVELY REPRESENTS THE FLORES.

After MCC's disappointing response, González zealously pursued the Flores' claims. CR1 852-855; CR1 872. Within ***one week*** of being retained, González:

(a) filed a lawsuit against MCC;

(b) obtained a temporary restraining order to preserve evidence;

(c) served written interrogatories;

(d) served requests for admissions;

(e) inspected the accident scene;

(f) obtained statements from eight MCC employees;

(g) hired two prominent liability experts; and thereafter,

(h) hired an insurance coverage expert to identify all applicable coverage.

CR1 663-664.

With the assistance of the insurance expert, González confirmed a total of six-million dollars in possible coverage: (a) one million in primary coverage; and (b) a $5 million excess policy. CR2 196:7-201:6.

After reviewing the discovery, witness statements, investigative reports, and consulting with experts and the Flores, González sent MCC

an $8.5 million demand in early December of 2013. CR2 75; CR2 201:7-202:2; CR2 212:11-215:13.

González ultimately negotiated a highly favorable settlement. CR1 809:1-810:20; CR1 860-62; CR1 872. Specifically, on or about December 26, 2013,[3] MCC and the Flores approved and executed a Rule 11 Settlement Agreement (the "Rule 11 Settlement") containing all material terms:

(1)   a formal apology to the Flores from the MCC board of directors and staff;

(2)   a forgiveness ceremony at St. Frances Xavier Cabrini Catholic Church;

(2)   $6,000,000 in insurance policy limits;

(3)   a $250,000 contribution (in excess of policy limits) to a non-profit of the Flores' choosing; and

(4)   implementation of safety measures. CR1 860-62.

The Flores embraced the Rule 11 Settlement, and participated with MCC board members, and MCC's personal attorney Mr. Ray Thomas (who had helped facilitate the settlement), in an emotional and profound

---

[3] Since the Rule 11 Settlement was executed approximately five months after the execution of the Contract, the 31% contingent fee provision in the Contract applied. CR1 852-855; CR1 860-62.

7

"forgiveness ceremony" at St. Frances, presided over by Father Edouard Atangana. CR1 860-62; CR1 811:7-813:2.

For all practical and legal purposes, the Rule 11 Settlement settled the case. The only remaining tasks were drafting formal release documents and establishing the non-profit. The Flores continued to acknowledge the settlement, including in discussions with González about whether to accept the settlement in a structured or a lump-sum payment. CR1 845, 847; CR1 852-55. Even after the Rule 11 Settlement was executed, Mr. Flores acknowledged González was entitled to its fee:

> Q.  On December 26th did you believe that González & Associates was entitled to its fee?
> MR. PEÑA:  Objection, form.
> A.  I did.
> Q.  (By Mr. Davis) Okay. You did?
> A.  I did.
> Q.  Okay. So, on December 26th, you intended for - - to comply with your engagement letter with González & Associates?
> A  Yes.
> Q.  Okay. And to pay 31 percent of the $6,250,000 fee, correct?
> MR. PEÑA:  Objection, form.
> A.  I don't know - - I do not know the amount.
> Q.  (By Mr. Davis) Okay. Well, whatever the engagement letter says, you intended to comply with your promise, right?
> A.  Correct. CR3 554 at 47:19-48:11 (emphasis added).

. . . .

**Q.** In February of 2014, you still intended to comply with the promises you made in the engagement letter regarding the fee to González & Associates?

**A.** **Correct.** CR3 567 at 98:3-6 (emphasis added).

## III. The Flores Discharge González to Avoid Paying the Agreed Fee.

In March of 2014, while the parties were finalizing the formal release documents, Mrs. Flores demanded González reduce its fee to 10%. Mrs. Flores warned that if González resisted, they would pay González nothing. CR1 996:2-18; CR4 209:23-210:24; CR4 211:4-212:12; CR4 213:16-215:22. González refused as González had already reduced its normal 40% rate in the Contract and had already achieved a very favorable settlement, which the Flores had accepted.[4] CR4 213:16-215:22.

Finally, on or about May 9, 2014, over four months after approving and executing the Rule 11 Settlement, the Flores discharged González. CR1 852-55; CR1 872; CR1 809:21-24; CR1 833-36. The Flores told González that they were not going to pay "a cent," and that González would have to sue them to recover its fee. CR5 638:3-25. That same day,

---

[4] In their Brief, the Flores raise allegations relating to a draft accounting statement predating González's termination, which they claim shows an oral modification of the Contract. Appellants' Brief at 10. The allegations relating to alleged oral modification are meritless and moot, as the Flores failed to appeal the Trial Court's March 12, 2015 Order Granting González's Motion to Exclude Evidence Regarding Oral Modification under the statute of frauds. CR5 703.

9

González filed a Plea in Intervention seeking to enforce the Contract. CR1 833-36.

## IV. The Flores Sue González in an Attempt to Pay Nothing.

On June 4, 2014, the Flores, now represented by new counsel, Mr. Jaime Peña, filed a Third Amended Original Petition in the underlying action against González **and** MCC (the "Third Petition"). The Third Petition alleged causes of action against González for: (a) breach of fiduciary duty; (b) common-law fraud; and (c) fraud by non-disclosure. *Id.* The Flores sought complete disgorgement of González' fee **and** rescission of the same Rule 11 Settlement they had accepted a few months prior when praising González and "forgiving" MCC during the St. Frances ceremony. CR1 860-62; CR1 811:7-813:2.

As explained below, the Flores later prudently withdrew any efforts to rescind the extremely favorable Rule 11 Settlement, and have now – for the second time – formally accepted the settlement. The $6 million in insurance proceeds remain interplead with the Trial Court.[5]

---

[5] The reason that only $6,000,000 (and not $6,250,000) was interplead is that the $250,000 portion of the settlement was to be paid directly to a charitable foundation in payments of $50,000. RR6 92:16-93:13.

10

Notably, the Flores did not include a breach of contract claim against González or a "good cause" affirmative defense to González' claim. CR1 149-164. Instead, the Flores strategically chose to go "all in" to deprive González of any fee by asserting only the tort claims. *Id.*

On June 17, 2014, the Court issued an Amended Docket Control Order (the "First DCO"), setting the following pleading deadlines: (a) August 8, 2014 for the Flores; and (b) August 15, 2014 for González. CR1 183-85.

On July 1 and 2, 2014, González deposed the Flores. Ms. Flores was questioned exhaustively concerning the basis for their claims. Ms. Flores testified that the allegations against González were based entirely upon the following:

a. <u>Allegation</u>: González misrepresented that counsel for MCC, Mr. Griffith, had asserted that the Flores' case was only worth two to three million dollars. CR1 819:10-16.

b. <u>Allegation</u>: González concealed that Mr. González allegedly owned stock in MCC. CR1 813:11-814:3; CR1 819:16-820:1.

c. <u>Allegation</u>: González failed to disclose an alleged ownership interest in APT, a litigation support company that performed services for González. CR1 819:25-820:9.

d. <u>Allegation</u>: González failed to recover Joel Flores, Jr.'s clothing and belongings. CR1 807:4-809:20; CR1 802:3-806:9.

11

e. <u>Allegation</u>: González failed to communicate with the media as the Flores requested.  CR1 815:7-817:19; CR1 802:3-806:9.

f. <u>Allegation</u>: González failed to properly communicate the status of the case with the Flores. CR1 803:17-24.

g. <u>Allegation</u>: González misrepresented MCC's net worth.  CR1 820:9-16.

(the "Alleged Misrepresentations").

As explained below, the Alleged Misrepresentations are nonsensical, immaterial, and insufficient to support the Flores' legal claims.  In addition to being immaterial, Ms. Flores, herself a licensed trial attorney, confessed that the majority of her own allegations were not supported by personal knowledge or any other competent evidence despite her sworn verification to the contrary.  CR1 163; CR1 852-55; CR1 822:18-827:18.

In light of the frivolous nature of the Flores' allegations, on July 7, 2014, González filed a Traditional and No-Evidence Motion for Summary Judgment ("MSJ"), which sought summary judgment as to all of the Flores' affirmative claims.  CR1 195-208.

On August 8, 2014 (the pleading deadline), the Flores filed their Fourth Amended Original Petition, Original Answer, and Counterclaims (the "Fourth Petition").  CR1 555-571.  The Fourth Petition again failed

12

to assert a breach of contract claim against González or a "good cause" affirmative defense.  *Id.*; CR1 183-85.

On August 15, 2014, González timely filed its Second Amended Petition in Intervention (the "Second Intervention").  CR1 183-85; CR1 724-736.  The Second Intervention asserted claims against the Flores for declaratory judgment and breach of the Contract.  CR1 727-732.  González affirmatively plead that "[a]ll conditions precedent have occurred."  CR1 732.

On August 18, 2014, González filed a Supplement to its MSJ (the "MSJ Supplement") to address four additional alleged misrepresentations raised for the first time in the Flores' late-filed Fifth Amended Original Petition (the "Fifth Petition").[6]  CR1 974-986.

On September 3, 2014, the Flores filed their Response to the MSJ and the MSJ Supplement (the "MSJ Response").  CR2 39-68.

---

[6] The Flores provided González with a copy of the Fifth Petition on August 15, 2014, 7 days after the pleading deadline.  However, the file-stamp on the Fifth Petition indicates that it was not filed until August 19, 2014, 11 days after the pleading deadline. CR1 1039; CR1 183. The Fifth Petition was not accompanied by a motion for leave.  *Id.*  The Fifth Petition: (a) failed to assert a claim for breach of contract; (b) failed to assert a "good cause" affirmative defense; and (c) failed to specifically deny any condition precedent.  *Id.*

On September 9, 2014, González filed its Reply to the Flores'
Response (the MSJ, MSJ Supplement, and MSJ Reply are collectively
referred to as the "MSJ"). CR3 240-246.

## V. The Flores For the Second Time Accept The Rule 11 Settlement Negotiated by González.

While the Summary Judgment briefing was ongoing, on September
8, 2014, the Flores reversed course on their efforts to rescind the Rule 11
Settlement. The Flores entered into an express agreement with MCC
again accepting the settlement terms. CR3 320-323; CR3 324. On
September 12, 2014, the Trial Court conducted a Pre-Trial Conference
(the "September PTC") during which the Flores explained:

> MR. PENA: **We've agreed to accept the December 26th Rule 11. That's what we have agreed to do.** RR6 19:8-10.

The Trial Court therefore observed that the Flores no longer had viable
claims that any of González' Alleged Misrepresentations induced them to
enter into the Rule 11 Settlement:

> THE COURT: Okay. Well, the way I see it, there is no more misrepresentation on this because, if you are accepting, your client is accepting the settlement offer, it is based on the opinion that it resolves all claims. . . . RR6 24:12-25:8.

14

. . . .

> As it relates to the settlement, any **alleged representations, misinformation, whatever you want to classify it**, as it relates to causing them to accept the Country Club's settlement, **those are now moot** . . . . RR6 38:11-15 (emphasis added).

In other words, despite all the strong, personally vindictive rhetoric aimed at González (both in the Flores' pleadings and in their Appellants' Brief), the simple reality is that when given a chance to try to get a better outcome with their new counsel, they refused. CR3 320-323; CR3 324. Instead, they again embraced the excellent result of González's services. *Id.*

At the conclusion of the September PTC, the Trial Court ordered that all deadlines, including "**discovery, pleadings, everything**" were "**frozen, period**." RR6 88:16-89:8 (emphasis added). Counsel for the Flores acknowledged that the deadlines were "frozen." RR6 88:24-89:5.

## VI. After Losing on All Their Tort Claims, the Flores Change Tactics and Attempt to Belatedly Plead Breach of Contract.

On September 25, 2014, the Trial Court granted González's MSJ on all of the Flores' affirmative claims. CR3 392-93.

15

Having lost their "all in" gambit to pay no fee, on October 9, 2014, the Flores filed a Motion for Leave to File Sixth Amended Petition (the "First Motion for Leave"). CR3 402-06. Now, **two months after the pleading deadline** (and after all parties recognized that pleadings were "frozen"), the Flores for the first time attempted to add a claim for breach of the Contract. CR3 408-19. The Flores claimed that González orally agreed to modify the contractual contingent fee from 31% to 25%. Far from trying to void the Contract, the Flores asserted:

> The **only issue remaining is a breach of contract dispute** between the parties regarding **whether the Intervenor is entitled to a 31% [fee] pursuant to his fee agreement or a 25% fee** pursuant to a modification and ratification and other affirmative defenses. CR3 402 (emphasis added).

The proposed Sixth Petition still failed to: (a) assert a "good cause" defense; or (b) specifically deny any condition precedent. *Id.*

In response, González asserted that the proposed Sixth Petition would cause surprise and prejudice, due to the inclusion of a new breach of contract claim. CR3 496-503; RR7 74:2-75:23. The Court agreed and promptly denied the First Motion for Leave.[7] CR4 56.

---

[7] The Trial Court recognized that the only reason the trial was "bumped" was due to congestion in the Trial Court's own docket. RR7 79:19-21.

16

On or about January 5, 2015, the parties received a second amended Docket Control Order. CR4 157-59. The Second DCO **inadvertently** extended the pleading deadline. CR4 187-89. On January 9, 2014, González filed a Motion to Modify Docket Control Order (the "Motion to Modify"), which brought the inadvertent extension to the Trial Court's attention. CR4 152-155.

Before the Trial Court could rule on the Motion to Modify, the Flores opportunistically filed a Supplemental Answer and Counterclaim seeking to take advantage of the inadvertent scheduling error. CR4 175-186. The Flores now attempted to assert a "good cause" defense for the first time while still failing to specifically deny any condition precedent. *Id.*

During the next hearing, the Trial Court acknowledged that the deadline extension was unintended, and advised that it would enter a corrected Second Amended Docket Control Order that would "supersede" any other docket control orders. RR9 6:10-8:14; RR9 15:5-16:12. The Trial Court entered the Corrected Second Amended Docket Control Order, clarifying that the pleading deadline had not been extended. CR4 187-89.

Refusing to take "no" as an answer, on February 11, 2015, the Flores filed yet another Motion for Leave to file a Supplemental Answer and Counterclaim (the "Second Motion for Leave"). CR4 311-314. González filed a Motion to Strike the Supplemental Answer and Counterclaim. CR5 42-46. On February 17, 2015, González also filed a Response to the Second Motion for Leave. CR5 168-174.

The Trial Court conducted a pre-trial hearing on February 19, 2015. RR10 25:7-29:11. During the hearing, González again argued that the Flores' attempt to raise new claims and defenses on the eve of trial would cause surprise and prejudice. RR10 25:7-28:9. Again, the Trial Court agreed and denied the Second Motion for Leave. RR10 29:10-11.

VII.  **The Flores Make Judicial Admissions Abandoning the "Good Cause" Defense and Then Ratify the Contract by Tendering Part of the Fee to González.[8]**

In addition to never properly or timely pleading the defense, the Flores made several judicial admissions abandoning the issue of "good cause." Specifically, the Flores asserted that if their First Motion for

---

[8] For purposes of clarity, any reference to the Flores' tender of 25% of the 31% contingent fee is not intended to mean that the Flores tendered 1/4 of the 31% contingent fee, but instead tendered a 25% contingent fee.

Leave was granted, the defense of oral modification would be "[t]he only issue remaining before the Court." CR3 402-406.

On October 9, 2014, the Flores similarly acknowledged "that all that is left before the Court is the breach of contract claim wherein Intervenor is seeking a declaration and enforcement of a 31% fee as opposed to a 25% fee." CR3 423.

In that same pleading, the Flores tendered a 25% contingent fee plus case expenses to González, thereby admitting that "good cause" for termination of the Contract was no longer a viable defense:

> [The Flores] … **agree to tender** the agreed $1,500,00.00 (25% of the $6,000,000.00 insurance proceeds) and reimbursable expenses for the underlying cause of action ($14,329.30) for a total of $1,514,329.30. CR3 423 at ¶ 13 (emphasis added).
>
> .    .    .    .
>
> It is [the Flores'] understanding of the effect of the Court's order that [the Flores'] affirmative claims seeking partial or full disgorgement of attorney's fees are gone and **all that is left before the Court is** the breach of contract claim wherein [González] is seeking a declaration and enforcement of **a 31% fee as opposed to a 25% fee**. CR3 423 at ¶ 15 (emphasis added).

At the December 4, 2014 Pretrial Hearing, the Flores confirmed their partial tender under the Contract:

> MR. PENA:    Your Honor, what - - what we've done is - - yeah, what we're seeking to enforce is the 25 percent,

19

which is what was promised. **That's it.** **And we've tendered it**. RR8 63:20-23 (emphasis added).[9]

Having tendered 25% under the Contract, the Flores necessarily abandoned a "good cause" avoidance defense. The only disputed issue was whether González would get the full 31% or just the 25% tendered. In fact, González accepted the tender of the undisputed 25%, and the Flores indicated a willingness to have the Trial Court disburse that amount of the fee to González. CR3 397-401; CR3 421; CR3 496-503. Ultimately, funds were not disbursed only because the parties could not agree on how much of a "reserve" to leave in the registry for González's attorney fee claim.

During the December Pre-Trial Hearing, the Flores further admitted, and the Court ruled, that any facts supporting an alleged avoidance defense of "good cause" were no longer at issue:

MR. DAVIS: But I don't think it is a defense but **the court has ruled on all the alleged misrepresentations of -- of whatever nature**. In fact, they're listed in -- in this motion. I asked that Ms. Flores and Mr. Flores list them all. And that was the subject of the court's ruling.

_____

[9] González also requested, under Texas Rule of Evidence § 201, that the Court take judicial notice that the Flores had tendered a 25% contingent fee to González, thus waiving their alleged defense of "good cause" for avoiding the Contract. CR5 305-09.

20

MR. PENA: And -- and those are the ones --the ones that are listed, we agreed with. **We are not going to get into those at trial.**

THE COURT: Okay. Now -- now I'm not sure I'm following you.

MR. PENA: **The -- the seven -- the seven that they've listed, those actual allegations.**

THE COURT: Okay. You -- **you're agreeing that you're not going to get into those?**

MR. PENA: Correct, Mr. –

THE COURT: **Okay. Then that moots this one.** Okay. That's already taken care of then. Let's move on.
RR8 65:5-23 (emphasis added).

During the same hearing, everyone again confirmed that "good cause" was no longer an issue.

MR. DAVIS: **Well, the -- the cause for termination is no longer an issue given the court's ruling** so we really have this question: They say an agreement was modified, we say it wasn't and, even if it were, it wouldn't be valid legally. So that's – that's the issue. So the only evidence in that conversation that would be relevant to that is when Mr. Flores says, we're not paying you anything. You have to sue us. That's all. The other stuff isn't relevant because that shows that they weren't trying to enforce any contract modified to 25 percent, even to 10 percent at

21

|  |  |
|---|---|
|  | that time, because the testimony was we felt at that time he was not entitled to a dime. |
| MR. PENA: | And, Your Honor, and that brings up all the context issues of why. They went there to have a discussion for a reason and they were upset and **there was a laundry list of things they were upset about and** – |
| THE COURT: | **Right, but none of those things were conditions of the contract.** |
| MR. PENA: | **No, I know that, Your Honor**, but the fact that on the termination, if that was said, you have to sue us, there's no reason for that. That would be unfairly prejudicial to us and that's why we're asking for a Motion in Limine. **The fact that they were terminated or he was terminated at that time and then he filed suit for his fees would be the only thing that's relevant. It's the same argument that he was making on how he doesn't want to discuss any of the facts surrounding the incident which we agreed to here. The fact that he was terminated on May 9th and that he sued for his fees on May 9th would be the only thing.** RR8 79:21-81:2 (emphasis added). |

Therefore, on February 27, 2015, González filed a Motion to Exclude Evidence Regarding Cause for Discharge ("Motion to Exclude") based, in part, on the above-referenced admissions. CR5 443-453. In the Motion to Exclude, González requested that the Trial Court take judicial notice

22

of the Flores' admissions, which it did implicitly by granting the Motion. CR5 447-448; CR5 693-694.

The parties ultimately agreed to and conducted a bench trial on González' breach of contract action. RR11 15:22-16:1. In addition to testimony and evidence regarding the Contract, the Court heard expert testimony on attorneys' fees from González' trial counsel and an additional fee expert, Mr. Robert Valdez. RR11 106:8-180:7; RR12 8:12-17:2. **The Flores offered no controverting expert testimony or other evidence to rebut the attorney fee testimony.** RR12 39:1-7. The Court found in favor of González on the Contract claim, and also awarded González the fees and expenses incurred in enforcing the Contract. CR5 710-712; RR12 76:14-77:24.

## SUMMARY OF THE ARGUMENT

The experienced Trial Court acted well within its discretion by: (a) granting summary judgment on the Flores' breach of fiduciary duty claim; (b) excluding evidence of good cause; and (c) awarding González its attorney's fees.

The Trial Court properly granted summary judgment as to the Flores' breach of fiduciary duty claim. The Flores failed to provide more than a scintilla of evidence of any breach and admitted that their assertions were not supported by personal knowledge or other competent evidence. In addition, and as an independent basis to affirm the Trial Court, the Flores failed to produce any evidence that any alleged breach resulted in either injury to them or a benefit to González. Thus, the Flores failed to raise more than a scintilla of evidence as to multiple elements of their claim.

In addition, even if taken as true, the Flores' allegations could not, as a matter of law, support a breach of fiduciary duty claim. It is undisputed that the Flores fully and finally ratified the terms of the Rule 11 Settlement and, as recognized by the Trial Court, have no plausible damages. In addition, the Flores unconditionally tendered a 25% contingent fee to González, thereby abandoning any possible basis to avoid their contractual obligations. For the foregoing reasons, the Trial Court did not abuse its discretion by granting summary judgment.

The Trial Court also did not abuse its discretion in excluding evidence of "good cause." A review of the record shows that there were several bases for the Trial Court's ruling.

First, the Flores were required to specifically plead "good cause" as an affirmative defense in avoidance, but repeatedly failed to timely do so. Second, the Flores were required to specifically deny any conditions precedent, but failed to do so, thereby foreclosing any argument that González was required to prove "good cause" in order to succeed on its breach of contract claim.

The Trial Court further properly denied the Flores' belated motions for leave because they were prejudicial on their face, as they inserted a new cause of action and a new affirmative defense which González could not have anticipated given the Flores' prior pleadings, trial tactics, and tender under the Contract. Moreover, the Flores' admission that, for tactical reasons, they had chosen not to timely assert a breach of contract claim against González, weighs heavily in favor of the Trial Court's finding as to surprise. Accordingly, the Trial Court properly denied the motions for leave.

25

Additionally, the final judgment would not have been affected by the excluded evidence. Through their pleadings and statements on the record, the Flores admitted that their only remaining defense was oral modification, and circumstances surrounding the termination were no longer at issue. These judicial admissions were conclusive as to the issue of "good cause." Accordingly, the Trial Court did not need to decide any fact issues as to "good cause."

Finally, and perhaps most telling, the Flores ratified the Contract by tendering a 25% fee to González. Having ratified the Contract, the Flores were estopped from seeking to avoid the same Contract via a "good cause" defense – even if it had been properly plead. For the foregoing reasons, the Trial Court did not abuse its discretion by excluding evidence of "good cause."

The Trial Court also did not err in awarding González its attorney's fees. González was not required to segregate its fees related to its sanctions request because it is well-established that a sanctions request does not constitute an independent cause of action requiring segregation.

26

In addition, in order for González to prevail on its breach of contract claim, for which attorney's fees are recoverable, it was necessary for González to defeat the Flores' competing claims relating to the same Contract. Accordingly, González' fees related to the sanctions request were not required to be segregated since they were directed at overcoming the Flores' interrelated competing claims.

The Flores also argue that the Trial Court erred in awarding González its attorney's fees because González did not satisfy the *Arthur Andersen* factors. *See Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997). However, the Flores' argument is simply not supported by the trial record, which shows that González satisfied each of the *Arthur Andersen* factors through uncontroverted expert testimony, even though a claimant is not required to satisfy each of the factors.

For all of the foregoing reasons, the Court should affirm the Trial Court.

## ARGUMENT AND AUTHORITIES

I.  THE TRIAL COURT PROPERLY GRANTED SUMMARY JUDGMENT ON THE FLORES' FIDUCIARY DUTY CLAIM

## A. Standard of Review

When the summary judgment order does not specify the grounds relied upon, the nonmovant is required to show that each ground alleged in the motion is insufficient to support the judgment. *Jones v. Hyman,* 107 S.W.3d 830, 832 (Tex. App.—Dallas 2003, no pet.). Summary judgment will be upheld if any one ground can be sustained. *Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex. 1989); *Siders v. State*, 970 S.W.2d 189, 191–92 (Tex. App.—Dallas 1998, pet. denied).

The Summary Judgment Order does not state the grounds on which it was granted. CR3 392-393. As a result, the Flores must show that each ground alleged in the MSJ is insufficient to support the Order. *Jones,* 107 S.W.3d at 832. In other words, the summary judgment must be upheld if there is any one meritorious reason to uphold it. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001); *Wood v. Dawkins*, 85 S.W.3d 312, 321 (Tex. App.—Amarillo 2002, pet. denied). As set forth below, the Flores cannot show that each ground alleged in the MSJ is insufficient. *See Jones,* 107 S.W.3d at 832. Accordingly, the Court should affirm the Summary Judgment.

**B.    González was entitled to Summary Judgment because there was no Breach of Fiduciary Duty as a Matter of Law.**

González filed both no-evidence and traditional summary judgments on the Flores' breach of fiduciary duty claim, both of which were granted in the Trial Court's order.

A court may grant a no-evidence motion for summary judgment if the movant can show that an adequate time for discovery has passed and the non-movant has no evidence to support one or more essential elements of his claim or defense.  Tex. R. Civ. P. 166a(i).  Unless a plaintiff presents more than a scintilla of evidence to raise a fact issue as to each challenged element, the motion must be granted. *Id.*; *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004); *Lindley v. McKnight,* 349 S.W.3d 113, 126 (Tex. App.—Fort Worth 2011, no pet.) ("Conclusory affidavits are not enough to raise fact issues").

Likewise, traditional summary judgment is proper where there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law.  Tex. R. Civ. P. 166a(c); *Am. Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 425 (Tex. 1997).  A movant must disprove at

least one element of each of the non-movant's causes of action. *Ward v. Emmett*, 37 S.W.3d 500, 501 (Tex. App.—San Antonio 2001, no pet.).

In order to establish their breach of fiduciary duty claim against González, the Flores were required to prove that: (a) González and the Flores had a fiduciary relationship; (b) González breached that fiduciary duty; and (c) González's breach resulted in (1) an injury to the Flores; or (2) a benefit to González. *See Graham Mortg. Corp. v Hall*, 307 S.W.3d 472, 479 (Tex. App.—Dallas 2010, no pet.); *see also Kinzbach Tool Co. v. Corbett-Wallace Corp.*, 160 S.W.2d 509, 513–14 (Tex. 1942). The parties do not contest the existence of a fiduciary relationship. However, the Flores failed to create a fact issue on the next two elements of breach and damages.

### i. *The Flores' allegations were not supported by personal knowledge or other competent evidence.*

In their Fourth Petition, like in Ms. Flores' deposition, the Flores recited the Alleged Misrepresentations as a basis for the alleged breach of fiduciary duty. CR1 568. As to each of these, the uncontroverted summary judgment evidence conclusively established that there was no genuine issue as to any **material fact**. CR1 975-978; CR1 1021-1024.

Shockingly, Ms. Flores, an experienced trial attorney practicing as an Assistant District Attorney, admitted under cross-examination that her **sworn** assertions regarding the Alleged Misrepresentations were not supported by personal knowledge or any other admissible evidence:

> Q. All right. And where do you work?
> A. I'm a prosecutor at the Hidalgo County District Attorney's Office. CR1 429:23-25.
>
> .  .  .  .
>
> Q. What do you call when one person tells another person something in the law?
> A. Hearsay.
> Q. Okay. And what you've just described is hearsay, correct?
> A. Yes.
> Q. Okay. Anything other than hearsay that you have sworn in a pleading, in a court that Jaime Gonzalez is a shareholder of the McAllen Country Club?
> MR. PENA:     Objection, form.
> A. Anything? No, I don't have anything else.
> Q. Okay. In other words, that is based upon a hearsay statement made to you by another prosecutor at the courthouse?
> A. Yes. CR1 243:23-244:12.
>
> .  .  .  .
>
> Q. (By Mr. Davis) My questions is, you do not know what John Griffith valued this case at?
> A. No. CR1 248:9-11.
>
> .  .  .  .
>
> Q. (By Mr. Davis) Okay. With regard to the interest in [APT], you don't have any personal knowledge whether Jaime González has any ownership interest in this company, correct?
> A. Correct. CR1 249:10-14.
>
> .  .  .  .

31

> Q. Okay. So you don't have a foundation one way or the other to tell us what Jaime González did, if anything, to determine the net worth of McAllen Country Club?
>
> A. Correct. CR1 253:14-18.

Thus, even before addressing the lack of merit in the Alleged Misrepresentations, they were based entirely on speculation and conjecture, which Texas courts have repeatedly found to be insufficient to defeat summary judgment *Id.*

    *ii.    The Flores' allegations were nonsensical, immaterial, and insufficient to support a breach of fiduciary duty claim.*

Beyond the fatal lack of evidentiary foundation, the Alleged Misrepresentations were also nonsensical, immaterial, and insufficient to support a breach of fiduciary duty claim. For example, the Flores alleged that González misrepresented that Mr. Griffith had asserted that the Flores' case was only worth two to three million dollars. CR1 819:10-16. However, Ms. Flores admitted there was no evidence of what Mr. Griffith's value of the case was at any point in the negotiation, before actual settlement. CR1 620:9-17; *see supra* at 31.

The Flores further alleged that González concealed an alleged ownership of stock in MCC. CR1 813:11-814:3; CR1 819:16-820:1. Ms.

Flores filed a signed verification that the allegation was "true and correct" and based on her "personal knowledge." CR1 141-142. She later admitted under oath and subject to penalty of perjury that the allegation was, in fact, based entirely on hearsay, and therefore her verification was false. CR1 243:23-244:12. In yet another contradiction, Ms. Flores claimed that when she hired the firm, Mr. González disclosed that he was a member of MCC:

> A. ... Another misrepresentation that he told me was - - I had to ask him, are you a member at the country club? And he told me, yes, but I'm fearless. CR1 1004:16-19.

The only competent summary judgment evidence, however, demonstrated that Mr. González was neither a member nor a shareholder of MCC. CR1 717:3-5; CR1 718:9-719:6. Either way, even under her version of the facts, she was complaining about a relationship that <u>was</u> disclosed to her when she hired González.

The Flores further alleged that González failed to disclose an ownership interest in APT, a litigation support company that performed services for González. CR1 819:25-820:9. However, during her deposition, Ms. Flores admitted that any expenses relating to APT were not charged

to her.  CR1 825:3-6.  Moreover, González (as opposed to his wife)[10], in fact, had no ownership interest in APT.  CR1 621:5-623:6; CR1 713:10-715:1.  The nonsensical nature of this allegation is clear: the Flores complain about <u>free</u> services provided for their benefit.

The Flores also alleged that González failed to recover Joel Flores, Jr.'s clothing and belongings.  CR1 807:4-809:20; CR1 802:3-806:9.  However, the Flores admitted that the clothing had to be retained by authorities during the pendency of the criminal investigation.  CR1 607:4-609:20; CR1 666.  Moreover, securing the clothing was not a part of the Contract, nor obviously did those actions result in a benefit to González. CR1 638-640; CR1 651-652.

The Flores also alleged González failed to communicate with the media as the Flores requested.  CR1 815:7-817:19; CR1 802:3-806:9.  However, the Flores admitted this service was not part of the Contract and was only requested as a "favor."  CR1 614:7-616:23.

The Flores also alleged that González failed to properly

---

[10] Since the Flores were never charged for the APT services, the allegation is patently irrelevant.  Nevertheless, even the allegation of ownership was false since the company is owned by Gonzalez's wife and the couple have a marital property agreement providing for no community property.  CR2 139:4-140:8.

communicate the status of the case with them. CR1 803:17-24. However, the Flores failed to complain about communication until March of 2014, months after the Rule 11 Settlement was executed and embraced by them in the St. Frances ceremony. CR1 602:3-606:9; CR1 642-644; CR1 649 at ¶ 19; CR1 669. Any allegation regarding communication was made only after the Flores decided to stiff González. Even accepting the allegation as true, it cannot as a matter of law constitute breach of fiduciary duty. *See Beck v. Law Offices of Edwin J. (Ted) Terry, Jr., P.C.*, 284 S.W.3d 416, 436 (Tex. App.—Austin 2009, no pet.) (If the gist of a plaintiff's complaint is that a lawyer "failed to advise, inform, or communicate with a client, it is a negligence claim.").[11]

The Flores further alleged that González misrepresented MCC's net worth. CR1 820:9-16. However, González relied on MCC's representation of its net worth in sworn interrogatory responses, and there was no evidence that González was informed of any other value. CR1 618:9-16; CR1 701; CR1 720:20-721:16. Again, the nonsensical nature of the Flores'

---

[11] Similarly, a professional negligence claim cannot be "fractured" out into a breach of contract claim, "because the real issue remains one of whether the professional exercised that degree of care, skill, and diligence that professionals of ordinary skill and knowledge commonly possess and exercise." *Beck*, 284 S.W.3d at 426–27.

35

complaint is clear – they complain that their lawyer informed them of what the opposing party included in sworn discovery responses. *Id.* More importantly, when later given the opportunity to set aside the settlement, the Flores prudently declined and accepted the excellent settlement obtained by González – regardless of what they thought MCC's net worth was. CR3 320-323; CR3 324.

For all of the foregoing reasons, González established that there was no genuine issue as to any **material fact** with respect to the existence of any breach based on the Alleged Misrepresentations. *See* Tex. R. Civ. P. 166a(c); *Burrow v. Arce*, 997 S.W.2d 229, 237 (Tex. 1999); *Grinnell*, 951 S.W.2d at 425.

The Flores belatedly attempted to raise several additional alleged misrepresentations in the untimely Fifth Petition; allegations which were not disclosed during the Flores' depositions. CR1 1039-1059; CR1 183; CR1 1002:11-1006:14. The summary judgment evidence conclusively established that there was no genuine issue as to these untimely allegations as well. CR1 974; Tex. R. Civ. P. 166a(c).

Specifically, the Flores alleged that González misrepresented that it would accept a 25% fee when it actually intended to collect a 31% fee.

CR1 1039-1059. However, Ms. Flores testified that before she signed the Contract, she discussed the contingent fee with González and asked González to lower its normal rate of 40% to 31%, to which González agreed, as reflected in the Contract. CR1 997:11-998:1; CR1 1026-1027. Ms. Flores further testified that in March of 2014, months after accepting the Rule 11 Settlement, she attempted to renegotiate the contract down to 10%:

> Q. When you in March [2014] attempted to renegotiate the contract to 10 percent Mr. González was not willing to do that?
> MR. PENA: Objection, form.
> Q. (By Mr. Davis) Correct?
> A. He – he said no. CR4 214:16-21.

Moreover, any claim that there was an oral modification from 31% to 25% was properly considered and rejected by the Trial Court as being barred by the statute of frauds, a ruling the Flores have not appealed. CR4 67-75; CR5 697-698.

The Flores further alleged that González misrepresented the urgency of settling the case. CR1 1039-1059. However, the Flores admitted that they reviewed the Rule 11 Settlement, discussed it with González, and agreed to its terms before they executed it. CR1 995:8-20; CR1 1000:15-20. Moreover, the Flores participated in a spiritual

37

consummation of the settlement during the St. Frances ceremony.  CR1 1001:5-9; CR1 1013-1015.  Moreover, as the Trial Court noted, the Flores ultimately accepted the settlement, rendering this allegation, as the others, simply nonsensical.  RR8 65:5-23; RR8 79:21-82:11.

The Flores further alleged that González misrepresented: (a) the various terms, consequences, conditions, and/or obligations that would result with the settlement of the case; and (b) the demeanor and character of Mr. Griffith.  CR1 1039-1059.  As a threshold matter, it has never been clear which terms, consequences, conditions, and/or obligations were allegedly misrepresented.  Moreover, as set forth above, the Flores admitted that they reviewed the Rule 11 Settlement, discussed it with González, and agreed to its terms before they executed it.  CR1 995:8-20; CR1 1000:15-20.  Accordingly, it is undisputed from their own testimony that the Flores were aware of and understood the Rule 11 Settlement.  *Id.*  In addition, because the Flores have accepted the terms of the Rule 11 Settlement, the statements, character, and demeanor of Mr. Griffith, if ever relevant, are moot and irrelevant to this appeal.  *Id.*

      iii.    *The Flores also failed to show that they were harmed or that González benefitted from any alleged breach.*

The Flores also failed to produce any evidence that the Alleged Misrepresentations resulted in injury to them or a benefit to González. *See Graham Mortg. Corp.*, 307 S.W.3d at 479. Instead, the summary judgment evidence established that Ms. Flores was unable to articulate any harm caused by the Alleged Misrepresentations. CR1 825:3-6, 828:6-24. The lack of harm is further evidenced by the Flores' acceptance of the terms of the Rule 11 Settlement:

> Q. The settlement agreement was for how much?
> A. It was for $6 million, policy limits; $250,000 to be paid to a nonprofit organization in memory of my son; and payments of $50,000 per year for the next five years. It included a former (sic) apology from board members, directors, lifeguards from the country club to us and an opportunity for us to address them. . . . CR1 791:23-792:8.
>
> . . . .
>
> Q. (By Mr. Davis) Okay... [A]ll the benefits that you received under the settlement agreement[,] that was negotiated by González & Associates on your behalf?
> A. Yes. CR1 794:17-21.

The only benefit González stood to gain was the agreed upon fee.

Relying on the same discredited Alleged Misrepresentations, the Flores also assert that the Trial Court incorrectly concluded that González proved as a matter of law that it treated the Flores with "absolute and perfect candor, [and] openness and honesty." Appellants'

39

Brief at 27. In addition to the fatal factual flaws, the legal authorities relied upon by the Flores do not support their argument.

For example, in *Perez*, lawyers told an individual that they were his attorneys, elicited a confidential statement from him, and later disclosed the statement to the district attorney without his consent. *Perez v. Kirk & Carrigan*, 822 S.W.2d 261, 265–66 (Tex. App.—Corpus Christi 1991, writ denied). Unsurprisingly, the court found that the firm had not treated the individual with "most abundant good faith." *Id.* The court simply recognized that lawyers cannot use a client's confidential information without consent in order to advance the lawyer's interest. *Id.* Such a situation does not exist in this case, nor has it even been alleged.

The Flores also assert that they were not required to prove actual damages in order to recover for breach of fiduciary duty. Appellants' Brief at 31. The cases cited by the Flores explain that when an attorney breaches his fiduciary duty via disloyalty, the attorney-client relationship is harmed, and fee forfeiture is viewed as a means of preventing such abuses of trust. *Burrow,* 997 S.W.2d at 238; *Adame v. Law Office of Allison & Huerta*, No. 13-04-670-CV, 2008 WL 2151454, at

40

*7 (Tex. App.—Corpus Christi May 22, 2008, pet. denied) (mem. op.). These same cases demonstrate why the Flores' allegations do not constitute disloyalty or a breach of fiduciary duty. *Burrow,* 997 S.W.2d at 238; *Adame*, 2008 WL 2151454, at *7.

For example, in *Adame,* a case involving allegations similar to the Flores', the court of appeals affirmed summary judgment when the plaintiffs based their claims on "conjecture and weak circumstantial evidence." *Adame*, 2008 WL 2151454, at *9. The *Adame* Court emphasized that while a plaintiff may not have to prove damages **if** they prove a breach, they still must first present evidence of a breach. *See id.* at *12 ("Appellants do not point to a single affidavit or other proof that any dissident-appellant was in fact impacted or was the victim of a breach of fiduciary duty."). As in *Adame*, the Flores failed to raise a fact issue concerning a breach and cannot create one by simply reciting the discredited Alleged Misrepresentations.

Likewise, the *Burrow* court noted that the remedy of fee forfeiture is restricted to "clear and serious" violations, and that "[i]t would be inequitable for an agent who had performed extensive services faithfully to be denied all compensation for some slight, inadvertent misconduct

41

that left the principal unharmed." *Burrow,* 997 S.W.2d at 241. The Flores never alleged a "clear and serious" breach of fiduciary duty, but instead cobbled together a series of immaterial and subjectively perceived micro-slights that were not supported by personal knowledge or any other admissible evidence. CR1 852-55; CR1 822:21-827:18. Moreover, the Flores failed to allege any impact from any of the Alleged Misrepresentations, as they have accepted the settlement.

For all of the foregoing reasons, González was entitled to summary judgment on the Flores' claim for breach of fiduciary duty, and this Court should affirm the Trial Court.

## C. The Presumption of Unfairness does not Apply.

The Flores assert that their "pleadings are replete with references" to "self-dealing" and that, as a result: (1) the Trial Court should have applied a "presumption of unfairness;" (2) the burden of proof for negating this presumption should have been switched to González; and (3) the Trial Court failed to hold González to that burden. Appellants' Brief at 23-24. In support, the Flores recite the previously discredited APT allegation and MCC stock allegation. Appellants' Brief at 24. As explained in detail above, the summary judgment evidence established

that neither allegation supported a finding of self-dealing.  However, both allegations highlight the desperate and frivolous nature of the Flores' campaign to avoid paying González its fee.

Self-dealing occurs when "the fiduciary uses the advantage of his position to gain a benefit at the expense of those to whom he owes a fiduciary duty." *Mims-Brown v. Brown*, 428 S.W.3d 366, 374 (Tex. App.—Dallas 2014, no pet.).  Thus, "[w]hen an agent *engages in self-dealing in a transaction with his principal*, the transaction is presumptively unfair." *In re Estate of Miller*, 446 S.W.3d 445, 453 (Tex. App.—Tyler 2014, no pet.) (emphasis added).

The uncontroverted summary judgment evidence shows that the APT allegation fails to satisfy the definition of self-dealing as a matter of law. *See Mims-Brown*, 428 S.W.3d at 374.   First, González (as opposed to his wife) had no ownership interest in APT.  CR1 621:5-623:6; CR1 713:10-715:1    Second, and perhaps most importantly, the Flores admitted that they were never charged for services rendered by APT. CR1 245:25-246-9; CR1 1024; CR2 107; CR2 137:10-139:1.  As a result, it was the Flores, not González, who gained a benefit in the form of free litigation support services provided by APT.  *Id.; see Mims-Brown*, 428

S.W.3d at 374. Accordingly, the APT allegation cannot constitute self-dealing.

The MCC stock allegation also fails to satisfy the definition of self-dealing as a matter of law. *See Mims-Brown*, 428 S.W.3d at 374. First, Ms. Flores admitted that this allegation was based entirely on hearsay. CR1 141-142; CR1 243:23-244:12. In addition, Ms. Flores claimed that when she hired the firm, Mr. González did disclose that he was a member of MCC, and with that knowledge, they proceeded to hire the firm. CR1 1004:16-19. While the only competent summary judgment evidence showed that Mr. González was neither a member nor a shareholder of MCC, even accepting Ms. Flores' own testimony as true, this cannot be a basis for self-dealing as a matter of law, given that: (a) Ms. Flores admits the disclosure at the time of engagement; and (b) the Flores nevertheless hired González and accepted the Rule 11 Settlement. CR2 141:3-8; CR2 145:9-146:6.

Moreover, like the APT allegation, the MCC allegation is simply nonsensical. A shareholder does not benefit from his shareholder status by suing the entity in which he owns shares and causing them to pay a multimillion dollar settlement - over and beyond insurance limits. The

44

summary judgment evidence conclusively establishes that González did not receive a benefit at the expense of the Flores. *Id.; see Mims-Brown*, 428 S.W.3d at 374. As a result, the Flores' allegations fail to satisfy the definition of self-dealing as a matter of law. Accordingly, the presumption of unfairness does not apply.

In addition, Texas courts have emphasized that the presumption of unfairness never attaches where an attorney negotiates a fee agreement at arm's-length with a sophisticated party. *See Tanox, Inc. v. Akin, Gump, Strauss, Hauer & Feld, L.L.P.*, 105 S.W.3d 244, 264–65 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). Ms. Flores, an experienced trial attorney, negotiated the Contract at arm's length on her and her husband's behalf. CR2 70; CR3 242. Moreover, prior to executing the Contract, Ms. Flores shrewdly negotiated a fee reduction from 40% to 31%. CR2 70; CR2 86-87. Accordingly, as evidenced by its own terms, the Contract was negotiated at arm's length by a sophisticated attorney. *Id*. As a result, the presumption of unfairness never attached to the Contract. *See Tanox, Inc.,* 105 S.W.3d at 264–65.

In addition, the cases cited by the Flores concerning the presumption of unfairness do not support their position. Appellants'

Brief at 23-24. For example, in *Bright,* a fiduciary occupied roles as both lawyer and business partner to his clients. *Bright v. Addison*, 171 S.W.3d 588, 597 (Tex. App.—Dallas 2005, pet. denied). The parties stipulated to the "self-dealing" facts – i.e., that the fiduciary had taken advantage of a business opportunity for his own benefit without telling his clients. *Id.* Here, far from stipulating to self-dealing, González never benefitted from any opportunity to the detriment of the Flores. CR1 245:25-246-9; CR1 1024; CR2 107; CR2 137:10-139:1; CR2 141:3-8; CR2 145:9-146:6. Accordingly, the standards and duties referenced in *Bright* do not apply because the Flores' allegations do not constitute self-dealing. *See Bright*, 171 S.W.3d at 597.

Another case cited by the Flores involved an attorney who apportioned the real property of an elderly and unsophisticated client without adequately informing her, then took one-third of it as his fee. *Cole v. Plummer*, 559 S.W.2d 87, 88 (Tex. Civ. App.—Eastland 1977, writ ref'd n.r.e.). Here, unlike *Cole*, the Flores were far from unsophisticated. CR3 242. Moreover, as explained above, there has been no evidence of any self-dealing. In fact, the Flores have readily accepted the benefits of González's services. The nonsensical APT and MCC allegations cannot,

46

as a matter of law, constitute self-dealing unlike the egregious facts present in *Cole.*

Similarly, in *Jackson*, a law firm failed to reduce its fee agreement to writing, inflated the legal fees charged to the client and charged the client for defending themselves against a grievance from the client's husband. *Jackson Law Office, P.C. v. Chappell*, 37 S.W.3d 15, 20 (Tex. App.—Tyler 2000, pet. denied). As a prerequisite to continued representation, the law firm then coerced the client into assigning to the firm, proceeds from properties without telling the client that such action violated existing court orders, and could have subjected the client to contempt. *Id.* In stark contrast to the instant case, *Jackson* involved clear instances of self-dealing and coercion by the fiduciary to the detriment of the client. *See id.*

For the foregoing reasons the Trial Court was not required to apply the presumption of unfairness. Moreover, it is not clear from the Summary Judgment Order that the Trial Court did not consider the presumption of unfairness in its analysis. Accordingly, the Trial Court should be affirmed on any basis asserted in the MSJ. *See Jones,* 107 S.W.3d at 832.

47

For all of the foregoing reasons the Trial Court did not err in granting the MSJ.

II.    THE TRIAL COURT DID NOT ABUSE ITS DISCRETION BY EXCLUDING EVIDENCE OF GOOD CAUSE

A.    Standard of review

In order to obtain a reversal based on a trial court's decision to exclude evidence, the appellant must show: (1) that the trial court did in fact commit error; and (2) that the error was reasonably calculated to cause and probably did cause rendition of an improper judgment. *Gee v. Liberty Mut. Fire Ins. Co.,* 765 S.W.2d 394, 396 (Tex. 1989). In other words, the complaining party should show "that the judgment turns on the particular evidence excluded. . . . ." *City of Brownsville v. Alvarado*, 897 S.W.2d 750, 753–54 (Tex. 1995). An appellate court "must uphold the trial court's evidentiary rulings if there is any legitimate basis in the record for the rulings." *Lindley*, 349 S.W.3d at 126.

B.    The Trial Court Properly Excluded Evidence of Good Cause Because the Flores Tendered a 25% fee on the Same Contract they Sought to Avoid.

The Trial Court properly excluded evidence of good cause because the Flores tendered a 25% fee on the same Contract they sought to avoid.

48

CR3 397-401; CR3 421; CR3 496-503.  Having tendered the 25% portion

of the fee, the Flores could not then seek to avoid the Contract.  *See State*

*Fair of Tex. v. Seay*, 98 S.W.2d 232, 234 (Tex. Civ. App.—Fort Worth

1936, writ dism'd) (holding that a defendant's tender constitutes a

conclusive admission of "every fact which the plaintiff would be obliged

to prove in order to recover that money").  By tendering the 25% portion

of the fee, the Flores conclusively admitted every fact that González could

have been required to prove in order to recover the fee, including the

existence of and enforceability of the Contract.  *See id.*  Having tendered

the 25% fee, the defense of good cause was no longer relevant, and the

Trial Court properly excluded it.

C. **The Trial Court Properly Excluded Evidence of Good Cause Because of the Flores' Repeated Failure to Comply with the Pleading Rules and Deadlines.**

The Trial Court properly excluded evidence of good cause because

of the Flores' failure to comply with the pleading rules and deadlines.

i. *Texas Rule of Civil Procedure 94 requires that avoidance defenses be specifically plead, and the Flores failed to do so.*

Pursuant to Texas Rule of Civil Procedure 94, affirmative defenses

in avoidance must be specifically plead.  Tex. R. Civ. P. 94; *see MAN*

*Engines & Components, Inc. v. Shows,* 434 S.W.3d 132, 136 (Tex. 2014).

The affirmative defense of "good cause" is subject to the requirements of

Rule 94 because it sets forth "an independent reason why the plaintiff

should not recover." *Id.; see also Howell v. Kelly,* 534 S.W.2d 737, 740

(Tex. Civ. App.—Houston [1st Dist.] 1976, no writ) (**stating that the

burden is on the party seeking to avoid contingent fee agreement to

specifically plead such defense**). Accordingly, the Flores were required to

specifically plead "good cause" as an affirmative defense. *See id.* They

failed to do so.

> ii. *The Flores were also required to specifically deny any
> conditions precedent they believed González had not
> performed, and they failed to do so.*

Similarly, if a party seeking affirmative relief alleges that all

conditions precedent have occurred, the defending party must specifically

deny any conditions that have not occurred. Tex. R. Civ. P. 54;

*Greathouse v. Charter Nat'l Bank-Sw.,* 851 S.W.2d 173, 177 (Tex. 1992).

Where the defending party fails to specifically deny the conditions that

have not occurred, it admits that all conditions precedent occurred. *Id.*

Here, González timely plead that all conditions precedent had occurred.

CR1 732. Accordingly, the Flores were required to specifically deny any

conditions that they alleged had not occurred. *See* Tex. R. Civ. P. 54; *Greathouse*, 851 S.W.2d at 177. They failed to do so.

>    iii. *The Flores repeatedly failed to comply with the Trial Court's deadlines.*

When a pretrial order establishes a deadline to amend pleadings, a party must file amended pleadings according to those deadlines. Tex. R. Civ. P. 63, 166; *Mackey v. U.P. Enters., Inc.*, 935 S.W.2d 446, 461 (Tex. App.—Tyler 1996, no writ); *ForScan Corp. v. Dresser Indus., Inc.*, 789 S.W.2d 389, 393 (Tex. App.—Houston [14th Dist.] 1990, writ denied).

Pursuant to the First DCO, Flores' pleading deadline was August 8, 2014. CR1 183-85. It is uncontroverted that as of August 8, 2014, the Flores had failed to: (a) assert a breach of contract claim; (b) plead "good cause" as an affirmative defense; or (c) specifically deny that González had performed all conditions precedent. CR1 183-85; CR1 555-571; CR1 1039-1059; CR3 408-19; CR4 175-186. Accordingly, with respect to any claim or defense potentially relating to "good cause," the Flores failed to comply with the pleading deadlines.[12] *Id.;* Tex. R. Civ. P. 63, 166.

---

[12] González's Third Traditional Motion for Summary Judgment did not relieve the Flores of the burden of pleading "good cause." The Flores cannot avoid the fact that they simply failed to plead good cause; nor would they have plead it, in light of the fact that at the time the Third Traditional Motion for Summary was filed, the Flores

D.   The Trial Court Properly Denied Leave for the Flores to Amend their Pleadings.

When a party seeks to amend its pleadings after the deadline set forth in the pretrial order, the party must secure leave of court. Tex. R. Civ. P. 63, 166; *Hart v. Moore*, 952 S.W.2d 90, 95 (Tex. App.—Amarillo 1997, pet. denied). A trial court should not grant leave to amend where the party opposing the amendment: (a) is able to show that the amendment would cause surprise or prejudice; or (b) the amendment is prejudicial on its face because it asserts a new cause of action or defense that is calculated to surprise or would reshape the case. *Greenhalgh v. Serv. Lloyds Ins. Co.*, 787 S.W.2d 938, 939–40 (Tex. 1990); *White v. Sullins,* 917 S.W.2d 158, 161 (Tex. App.—Beaumont 1996, writ denied).

i.   *The Flores' untimely amendments were prejudicial on their face.*

An amendment is prejudicial on its face if: (a) it asserts a new substantive matter that reshapes the nature of the trial itself; (b) the opposing party could not have anticipated the amendment in light of the prior development of the case; and (c) the opposing party's presentation

---

had already tendered a 25% fee to González and represented to the Court they were not using such defense. CR3 397-401; CR3 421; CR3 496-503; CR4 190.

52

of the case would be detrimentally affected. *See Dunnagan v. Watson,* 204 S.W.3d 30, 38 (Tex. App.—Fort Worth 2006, pet. denied); *see also Greenhalgh,* 787 S.W.2d at 939. The Flores' proposed amendments were prejudicial on their face because they included a new claim for breach of contract and a new "good cause" affirmative defense which González could not have anticipated given the Flores' pleadings, trial tactics, and affirmative representations to the contrary to the Trial Court and parties. *See id.*

The Flores' decision to add the breach of contract claim obviously did not result from any recently discovered matters. In fact, during the September Pre-Trial Conference, after the close of discovery, the Flores assured the Trial Court that they had no breach of contract claim:

> THE COURT: Okay. Then listen to my question: Do you agree that there is no breach of contract agreement against Mr. Gonzalez?
>
> MR. PENA: That's correct. RR6 58:2-5.
> . . . .
> MR. PENA: **There is no breach of contract claim against Intervenor, that's correct**. RR6 58:19-20 (emphasis added).

Later, at the February 2015 Pre-Trial Hearing, the Flores conceded they had made a **tactical decision** to seek total disgorgement under a breach

53

of fiduciary claim rather than raise a claim that González breached the Contract.

> MR. PENA: Before we had affirmative claims for breach of fiduciary duty. **Our position was we could not argue for breach of contract and then also assert breach of fiduciary duty. The court granted summary judgments against breach of fiduciary duty, so, therefore, we're now -- we no longer have a conflict** between -- because we couldn't argue –
>
> THE COURT: Well, **but you made an election at that point in time what you wanted to plead**.
>
> MR. PENA: **That's correct, Your Honor**, because, at the time, we're fighting their breach of contract. RR10 24:4-15.

In other words, the Flores intentionally chose to raise other affirmative claims instead of a breach of contract claim, *and only sought to raise a contract claim after all of their other affirmative claims had been lost on summary judgment. Id.*

By that time, the deadline for amending pleadings had long since passed. CR1 183. González (and the Trial Court) could not have anticipated the breach of contract claim because the Flores had specifically represented in open court that they had no breach of contract

54

claim. RR6 58:19-20. González's case would have been detrimentally affected as it would have conducted different discovery, hired different experts, and pursued different defensive strategies but for the Flores' affirmative representations to the Court and all parties that no breach of contract action or avoidance defenses were being asserted. *See Dunnagan*, 204 S.W.3d at 38. Accordingly, <u>*on this basis alone*</u>, the Trial Court's denial of the Flores' Motions for Leave was proper.

>    ii.    *The Flores' untimely amendments would have also caused surprise and prejudice.*

The Flores' untimely breach of contract claim and "good cause" affirmative defense would have caused surprise and prejudice. In determining whether surprise exists, courts can consider the following: (a) how long the suit had been on file before the amendment; (b) how close to trial the amendment was filed; (c) whether the amendment presents a new claim; (d) if the amendment presents a new claim, whether it is based on recently discovered matters; and (e) whether the opposing party alleged surprise and that it was not prepared to try the new claim. *Dunnagan*, 204 S.W.3d at 38; *see Hajdik v. Wingate*, 753 S.W.2d 199, 203–04 (Tex. App.—Houston [1st Dist.] 1988), *aff'd*, 795 S.W.2d 717 (Tex.

1990); *see also Stevenson v. Koutzarov*, 795 S.W.2d 313, 321 (Tex. App.—Houston [1st Dist.] 1990, writ denied).

The *Hajdik* court held that the trial court abused its discretion by allowing an amendment adding a new cause of action "on the eve of trial," when the new claim was "not based on any late discovered matters, and where the complaining party alleged surprise and that he was not prepared to try the new cause of action." *Hajdik*, 753 S.W.2d at 204.

Similarly, the *Stevenson* court held that the trial court abused its discretion by allowing amendments where: (a) the amendments were filed more than two years after the responding party was added to the suit; (b) the amendments were made shortly before trial; (c) the amendments pleadings introduced new claims; (d) the late claims were not based on recently discovered matters; and (e) the responding party alleged surprise and that they were not prepared to try the new claims. *Stevenson*, 795 S.W.2d at 321. The *Stevenson* court specifically noted that "[a] significant similarity between this case and *Hajdik* is the short period between filing the amendment and trial." *Id.*

Similar to *Hajdik* and *Stevenson*, the Sixth Petition would have caused surprise and prejudice. On the eve of trial, the Flores attempted

56

to add a new breach of contract claim and good cause defense via the Sixth Petition, which was filed two months after the pleading deadline, and nearly a month after the Flores assured the Trial Court that they had no breach of contract claim. CR1 70-73; CR1 183-185; CR3 402-406; RR6 58:19-20. Moreover, the Flores' attempted breach of contract claim was not based on recently discovered matters, but instead resulted from a tactical decision to assert other affirmative claims, which they then lost on summary judgment. RR10 24:4-15; *see Dunnagan*, 204 S.W.3d at 38.

González demonstrated surprise and prejudice:

- "[T]he deadline to amend pleadings pursuant to the DCO has long since passed."

- "[The Flores] have acknowledged on the record that the DCO deadlines have been frozen."

- "[W]hen [the Flores] filed their Fifth Amended Petitions at the close of discovery, they failed to assert a cause of action for breach of contract."

- "[T]he requested amendment was filed approximately three weeks after the originally scheduled trial date and presents an entirely new claim for breach of contract, which is not based on recently discovered matters."

- "[T]he discovery period has closed and González cannot conduct discovery on a new breach of contract claim."

- "Prior to the close of discovery, [the Flores] maintained that they were not asserting a claim for breach of contract."

- "González relied on [the Flores'] pleadings in conducting discovery, securing expert witnesses, engaging in summary judgment procedure, and engaging in pre-trial preparations."

- "If [the Flores] had timely asserted a claim against González for breach of contract, González's preparations would have been much different in that: (a) González would have propounded written discovery to [the Flores] regarding a breach of contract claim; (b) González would have examined [the Flores] regarding a breach of contract claim during their depositions; (c) González would have secured expert testimony to defeat a breach of contract claim by [the Flores]; (d) González would have requested summary judgment on a breach of contract claim by [the Flores]; and (e) González would have prepared motions to exclude, motions in limine, and other pretrial motions relating to such claim."

- "even when questioned by the Court, [the Flores] have clearly asserted that they do not have any contract claims against González."

CR3 499-501 (emphasis added). During the October 2014 Status Conference, González again explained:

MR. DAVIS: [the Sixth Petition is] beyond the scheduling order, it's beyond the court's clear instructions when both parties announced ready.
RR7 75:7-9.

. . . .

MR. DAVIS: So, Judge, are we prejudiced and does this constitute surprise and prejudice even if there

58

> were not a clear order from the court? The answer is yes. RR7 74:12-14.

. . . .

MR. DAVIS: It would be a much different case, Judge, if – if 10 months ago, they alleged, hey we have this oral agreement . . . if they did that, it would be a much different case. RR7 74:18-22 (emphasis added).

In light of that procedural history and record, the Trial Court did not abuse its sound discretion when it denied the Motion for Leave. *See Air Products and Chemicals, Inc. v. Odfjell Seachem A/S*, 305 S.W.3d 87, 94–95 (Tex. App.—Houston [1st Dist.] 2009, no pet.) (amendments would have reshaped the litigation when the party opposing the amendment argued that "if the trial court allowed the amendment, it would need to designate additional witnesses . . . and that it would need to conduct additional discovery").

When the Trial Court denied the Second Motion for Leave, the status of the case had not changed. CR4 56; RR10 29:10-11. All deadlines remained "frozen." CR1 183-185; RR6 88:16-89:8. Accordingly, there was no newly discovered evidence to support a breach of contract claim or a "good cause" defense. *Id.*; RR10 26:15-17; *see Dunnagan*, 204 S.W.3d at 38; *Hajdik*, 753 S.W.2d at 204. Moreover, González again established surprise and prejudice:

59

JUDGE:          Okay.  And my question to you is . . . as of right now, could you respond to that argument about surprise.

MR. DAVIS:      Absolutely, Judge. And – and we'll take notice of -- of the written arguments we've made on that issue, but the surprise is this . . .  They did not allege a breach of contract. In fact, the transcripts, and -- and you'll recall because it's cited, you said, "answer me, Mr. Pena, do you have a breach of contract?" He said "no" . . . And so they chose not to have an affirmative claim. So -- so, now, all of a sudden, having lost those on summary judgment, they say, okay, okay, maybe it's a breach of contract. **And not only is that a change of the case**, but it's also done past the pleading deadlines, past the time that this court has already denied leave to do the same thing and **it dramatically changes it because my client has been fighting and spending good money on the fraud and fiduciary duty** . . . But they never sought to enforce, Judge, and this is key, they never sought to enforce a contract on the alleged modified basis. . . . This case was about a total disgorgement. **So it does change the entire nature of the case. It would have changed the amount of discovery, both written discovery and the depositions that we have taken in this case.** RR10 25:7-26:17.

MR. DAVIS:      And so, Judge, there is tremendous amount of surprise and prejudice.  RR10 27:12-13 (emphasis added).

*See Dunnagan*, 204 S.W.3d at 38; *Hajdik*, 753 S.W.2d at 204.  The Trial

Court did not abuse its discretion in denying the Second Motion for Leave

60

and the Supplemental Answer and Counterclaim. *See Air Products,* 305

S.W.3d at 94–95.

> E. **As a Separate and Independent Basis to Affirm the Trial Court's Ruling, The Judgment Rendered did not Turn on the Excluded Evidence.**

The Trial Court also did not err because the Judgment would not

have been affected by the excluded evidence. *See Alvarado,* 897 S.W.2d

at 753–54. A successful challenge to an evidentiary ruling requires a

showing that the judgment turns on the particular evidence, an analysis

that requires a review of the entire record. *Id.* at 754.

The Flores assert that the Trial Court erred by excluding evidence

of "good cause" because it was allegedly relevant to González's breach of

contract claim. Appellants' Brief at 36. However, the standard is not

whether the evidence was relevant, but whether the judgment turned on

the excluded evidence. *Alvarado,* 897 S.W.2d at 753–54.

As set forth above, the Flores failed to timely plead "good cause" as

an affirmative defense in avoidance. CR1 177-179; CR1 555-571; Tex. R.

Civ. P. 94; *see Shows,* 434 S.W.3d at 136. As a result, "good cause" was

not a "live" defense. *Id.*

Similarly, the Flores were required to specifically deny that González had performed all conditions precedent, but failed to do so. CR1 183-85; CR1 555-571; CR1 1039; CR3 408-19; CR4 175-186; Tex. R. Civ. P. 54; *Greathouse,* 851 S.W.2d at 177. González was not required to prove as a condition precedent, that it was discharged without "good cause." *Id.*

In addition, a "good cause" defense was foreclosed through the Flores' own admissions. Clear and unequivocal assertions of fact contained in a party's live pleadings that are not plead in the alternative are regarded as judicial admissions. *Holy Cross Church of God in Christ v. Wolf,* 44 S.W.3d 562, 568 (Tex. 2001); *Mapco, Inc. v. Carter,* 817 S.W.2d 686, 687 (Tex. 1991). Once established by judicial admissions, no questions on the fact needs to be submitted to the fact finder. *See Horizon/CMS Healthcare Corp. v. Auld,* 34 S.W.3d 887, 905 (Tex. 2000) ("A judicial admission 'not only relieves [an] adversary from making proof of the fact admitted but also bars the party himself from disputing it.'") (internal citations omitted).

In the Motion to Exclude, González requested that the Trial Court take judicial notice that the Flores had admitted; (a) that their only

remaining defense was oral modification; (b) that the only relevant facts regarding González' termination were that González was terminated and then sued the Flores for its fees; and (c) that the Alleged Misrepresentations ("good cause") were no longer at issue, would not be addressed during the trial, and were moot. CR3 423; RR6 24:12-25:8; RR6 25:9-12; RR6 38:11-15; RR8 79:21-81:2; RR8 63:5-23. The Trial Court granted the Motion to Exclude in all respects, thereby taking judicial notice of the Flores' admissions. CR5 693-694. As "good cause" was admittedly not an issue in the case, the excluded evidence was not relevant.

Moreover, as set forth above, an avoidance defense of "good cause" was not relevant because the Flores tendered a 25% fee on the same Contract they sought to avoid. CR3 397-401; CR3 421; CR3 496-503. Having tendered the 25% portion of the fee, the Flores could not then seek to avoid the Contract. *See State Fair of Tex.*, 98 S.W.2d at 234.

For all of the foregoing reasons, the Judgment did not turn on the excluded evidence regarding "good cause." *See Alvarado,* 897

S.W.2d at 753–54.  Accordingly, this Court should affirm the Trial Court's exclusion of evidence.

### III.  THE TRIAL COURT DID NOT ABUSE ITS DISCRETION BY AWARDING GONZÁLEZ ITS ATTORNEY'S FEES

At trial, the Court heard expert testimony on attorneys' fees from González's trial counsel, as well as Mr. Robert Valdez.  RR11 106:8-180:7; RR12 8:12-17:2.  The Flores, however, failed to timely designate an expert on attorney's fees and failed to offer any: (a) controverting expert testimony; or (b) controverting evidence of any other kind. CR5 86; RR12 39:1-7.  The expert testimony offered by González is thus accepted as true as matter of law. *See Ragsdale v. Progressive Voters League*, 801 S.W.2d 880, 882 (Tex. 1990); *AMX Enter's., L.L.P. v. Master Realty Corp.,* 283 S.W.3d 506, 519–20 (Tex. App.—Fort Worth 2009, no pet.); *Petco Animal Supplies, Inc. v. Schuster*, 144 S.W.3d 554, 567 (Tex. App.—Austin 2004, no pet.).

#### A.  Standard of Review

The trial court's decision to award attorneys' fees is reviewed under an abuse of discretion of discretion standard.  *Comm'rs Court of Titus Cnty. v. Agan*, 940 S.W.2d 77, 81 (Tex. 1997); *Llanes v. Davila*, 133

S.W.3d 635, 640 (Tex. App.—Corpus Christi 2003, pet. denied) (citing *Ragsdale*, 801 S.W.2d at 881. A trial court abuses its discretion only when it rules "'arbitrarily, unreasonably, or without regard to guiding legal principles.'" *Bexar Cnty. v. Deputy Sheriffs Ass'n of Bexar Cnty.*, 429 S.W.3d 673, 678 (Tex. App.—San Antonio 2014, no pet.) (citing *Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998)).

The amount of the award is reviewed under a legal sufficiency standard. *EMC Mortg. Corp. v. Davis*, 167 S.W.3d 406, 418 (Tex. App.—Austin 2005, pet. denied). An appellate court "must view the evidence in a light that tends to support the disputed finding and disregard evidence and inferences to the contrary." *Id.*; *see also Bexar Cnty.*, 429 S.W.3d at 677.

## B. The Trial Court's Award of Attorney's Fees Was Not an Abuse of Discretion

The Flores assert that segregation of fees was required. Appellants' Brief at 52-54. The Flores' argument is based on the flawed premise that González' request for frivolous pleading sanctions against the Flores constitutes an independent cause of action, for which attorney's fees are not recoverable. *See id.*

A claimant is required to segregate recoverable fees from unrecoverable fees only when attorney's fees relate solely to a claim for which such fees are unrecoverable. *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 313–14 (Tex. 2006). When legal services advance both recoverable and unrecoverable claims, they become intertwined and do not require segregation. *Id.* Also, when legal services are aimed at overcoming defenses to recoverable claims, the party raising defenses cannot suggest that overcoming such defenses was unnecessary. *Id.* at 314. Similarly, when an opposing party asserts a counterclaim that the must be overcome to recover on the recoverable claim, the attorney's fees necessary to defeat that counterclaim are also recoverable and do not have to be segregated. *7979 Airport Garage, L.L.C. v. Dollar Rent A Car Sys., Inc.,* 245 S.W.3d 488, 507–09 (Tex. App.—Houston [14th Dist.] 2007, pet. denied).

As a threshold matter and dispositive to the Flores' argument, González's request for frivolous pleading sanctions does not constitute an independent cause of action. *See Mantri v. Bergman*, 153 S.W.3d 715, 717 (Tex. App.—Dallas 2005, pet. denied) (noting that unlike a pending cause of action, a pending motion for sanctions does not make an

66

otherwise final-judgment interlocutory); *see also Lane Bank Equip. Co. v. Smith S. Equip., Inc.*, 10 S.W.3d 308, 312 (Tex. 2000). Texas courts treat requests for sanctions as motions, not as independent causes of action. *Mantri*, 153 S.W.3d at 718. González was not required to segregate its fees because González' request for sanctions did not constitute an independent cause of action for which segregation would be required. *Id.*; *see Lane Bank Equip. Co.*, 10 S.W.3d at 312.

The Flores cite *Tony Gullo* in support of their argument. Appellants' Brief at 54. However, in *Wein v. Sherman*, the appellate court noted that *Tony Gullo* does not stand "for the proposition that attorney's fees must be segregated for purposes of a sanction award." *Wein v. Sherman*, No. 03-10-00499-CV, 2013 WL 4516013, at *9 n.12 (Tex. App.—Austin Aug. 23, 2013, no pet.) (mem. op.). The *Wein* court further noted that the concept of segregation only applies to a party's principal claims, and that it had found no authority to support the contention "that the concept of segregation of attorney's fees applies to the award of attorney's fees as a sanction." *Id.* Similarly, the court in *JNS Enter., Inc. v. Dixie Demolition, LLC*, held that the general rules for recovery of attorney's fees do not apply to motions for sanctions. 430

S.W.3d 444, 459 (Tex. App.—Austin 2013, no pet.). As a result, the Flores' segregation argument fails.

In addition, González' fees pertaining to its sanctions request were not required to be segregated because such legal services were aimed directly at overcoming the Flores' claims, which was necessary in order for González to recover on its own claims. CR1 732-33. González' request for frivolous pleading sanctions related directly to the Flores' claims on the Contract and the Rule 11 Settlement.

To prevail on its contract claim, González had to defeat the Flores' claims relating to the same Contract and Rule 11 Settlement. CR1 555-571; CR1 724-736. González' request for frivolous pleading sanctions was directly related to those very claims. CR1 732-33. González' expert, Mr. Valdez, explained in uncontroverted testimony that if there was a misstep in defending against the Flores' claims, it would have been "fatal" to González's claims. RR11 130:1-15. The Trial Court made the same finding:

> COURT: The court finds that the factual matters are so intertwined as to the various claims, causes of action and defensive matters so as to make any segregation impractical and impossible because of the intertwined nature of such, hereby awards

> attorneys' fees in favor of the Plaintiff against the Defendant and makes -- and also finds that they are reasonable and necessary and customary in the amounts of the -- at the trial court level. RR12 77:4-12.

Accordingly, the attorney's fees related to González's request for sanctions were not required to be segregated. CR1 555-571; CR1 724-736; *see Tony Gullo,* 212 S.W.3d at 313–14; *7979 Airport Garage,* 245 S.W.3d at 507–09.

The Trial Court did not abuse its discretion in ruling that González's attorney's fees were not required to be segregated, and should be affirmed. *See EMC Mortg. Corp.,* 167 S.W.3d at 418; *Tony Gullo,* 212 S.W.3d at 313–14; *7979 Airport Garage,* 245 S.W.3d at 507–09.

### C. González Satisfied the *Arthur Andersen* Factors.

The Flores next assert that González did not satisfy the *Arthur Andersen* factors. However, at trial, González offered uncontroverted expert testimony from its trial counsel and Mr. Valdez regarding the factors. RR11 106:8-180:7; RR12 8:12-17:2. The Flores failed to offer any controverting testimony or evidence. RR12 39:1-7. The testimony offered by González at trial was therefore taken as true as matter of law by the Trial Court. *See Ragsdale*, 801 S.W.2d at 882; *AMX Enter's., L.L.P.,* 283

69

S.W.3d at 520; *Petco*, 144 S.W.3d at 567. Accordingly, the Flores' argument fails as a matter of law. *Id.*

The trial record shows that González satisfied each of the foregoing factors even though a claimant is not required to make such a showing. *See EMC Mortg. Corp.,* 167 S.W.3d at 418–19. A claimant can meet its burden in proving the reasonableness of its fee as long as the claimant provides evidence of "some of the eight *Arthur Andersen* factors." *Id.* at 419.

With respect to the first factor, the Flores allege that Mr. Valdez did not explain why the prosecution of González' claims and defenses required the use of three different law firms for the total number of hours expended. Appellants' Brief at 56. However, Mr. Valdez testified that after speaking with the attorneys and reviewing the docket sheet, he determined that "the matter was lengthy and complex." RR11 119:1-5. Mr. Valdez reviewed the billing statements for each of the firms, and explained the role of each in the case. RR11 124-128; RR11 129-131; RR13 23-112. Mr. Valdez testified that he "did not find duplicative work." RR11 129. The work performed by Thornton, Biechlin, Segrato, Reynolds & Guerra, L.C. was primarily in defense of the Flores' claims against

70

González.  RR11 129-30.  The work performed by Davis & Santos, Attorneys & Counselors, P.C. was primarily geared toward prosecuting González' claims against the Flores.  *Id.*  The work performed by the Law Office of Fernando G. Mancias was primarily directed at trial efforts.  *Id.*  Accordingly, the Flores' argument as to the first *Andersen* factor fails.

With respect to the second factor, the Flores allege that Mr. Valdez did not offer evidence that: (a) the three law firms were actually forced to turn down work; or (b) he considered that the time spent was spread across several attorneys and paralegals over the course of ten months. Appellants' Brief at 56-57.  The Flores' complaint with respect to the second factor is fundamentally flawed because the analysis focuses on "the *likelihood* that the acceptance of the employment will preclude other employment by the lawyer."  *Arthur Andersen*, 945 S.W.2d at 818 (emphasis added).  After his review of the docket sheet, timekeeper summaries, and physical file, Mr. Valdez concluded that it was likely that the firms were precluded from accepting other employment.  RR11 142-144.  Accordingly, the Flores' argument as to the second *Andersen* factor also fails.

The Flores attack the remaining *Andersen* factors by alleging that Mr. Valdez's testimony with respect to each of those factors was conclusory. Appellants' Brief at 57-58. Again, the Flores' argument is not supported by the trial record, which shows that Mr. Valdez provided detailed **uncontroverted** expert testimony as to each:

Factor 3: The fee customarily charged in the locality for similar legal services.

Mr. Valdez testified that he had been "blessed with a lot of work in the Rio Grande Valley" and that, as a result, he was familiar with the rates charged there. RR11 144-145. González' attorneys fell within the range of rates. RR11 145.

Factor 4: The amount involved and the results obtained.

Mr. Valdez testified that the posture of the case went from González "defending against very serious allegations of fraud and breach of fiduciary duty, eliminating all of those as a matter of law, to where the issues now are … what's a reasonable fee for the prosecution of this type of case. RR11 146.

Mr. Valdez further testified that based on his review of how the case had progressed, the results obtained had "been superior." *Id.*

Factor 5: The time limitations imposed by the client or by the circumstances. *Arthur Andersen*, 945 S.W.2d at 818.

Mr. Valdez testified that based on his review of the docket sheet, "things were being pushed" and that the case "didn't lay around." RR11 146.

Mr. Valdez further testified that there were at least two different trial settings and a "very active motion practice." RR11 146-47.

Factor 6: The nature and length of the professional relationship with the client.

Mr. Valdez testified that: (a) González enjoyed a "very long and good relationship" with Thornton Biechlin and Mancias; (b) that Thornton Biechlin and Mancias introduced González to Davis & Santos; (c) "everybody got along well to move the case forward;" and (d) the law firms cooperated with the wishes of González. RR11 147.

Factor 7: The experience, reputation, and ability of the lawyer or lawyers performing the services.

Mr. Valdez testified that: (a) he knew the attorneys from Thornton Biechlin and Mancias from private practice; (b) that he was familiar with Davis' work in the Rio Grande Valley; (c) that González' attorneys enjoyed "very good reputations" in the Rio Grande Valley; and (d) they had tried cases in the Rio Grande Valley with good results. RR11 148.

Factor 8: Whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.

Mr. Valdez testified that he was familiar with the billing arrangement between González and its attorneys, and

73

that González' attorneys charged González on an hourly basis.  RR11 148.

Mr. Valdez's testimony was anything but conclusory.

Moreover, *Coastal Transp. Co.*, the case on which the Flores primarily rely, provides that "when a reliability challenge requires the court to evaluate the underlying methodology, technique, or foundational data used by the expert, an objection must be timely made so that the trial court has the opportunity to conduct this analysis." *Coastal Transp. Co. v. Crown Cent. Petroleum Corp.*, 136 S.W.3d 227, 233 (Tex. 2004). Flores failed to timely make such an objection.  As a result, the Flores' reliability challenge is now restricted to the face of the record. *See id.* To challenge the reliability of Mr. Valdez's testimony, the Flores must show that it was conclusory on its face. *See id.*  As illustrated throughout the trial record, Mr. Valdez's testimony was specific and based on a careful review of the file.

For all of the foregoing reasons, viewing the evidence in a light that tends to support the trial court's ruling, and disregarding evidence and inferences to the contrary, the Trial Court did not abuse its discretion in

its attorney's fee award and should be affirmed. *EMC Mortg. Corp.,* 167 S.W.3d at 418; *Arthur Andersen*, 945 S.W.2d at 818.

**PRAYER**

WHEREFORE, PREMISES CONSIDERED, Appellee requests that this Court: (a) deny the Flores' requested relief in all respects; (b) affirm the September 25, 2014 Order granting Appellee's summary judgment as to the Flores' claim for breach of fiduciary duty; (c) affirm the March 23, 2015 Final Judgment; and (d) grant such other relief to which Appellee is entitled.

Respectfully submitted,

**DAVIS & SANTOS**
**ATTORNEYS & COUNSELORS, P.C.**
112 E. Pecan Street, Suite 900
San Antonio, Texas  78205
Telephone:  (210) 853-5882
Facsimile:  (210) 200-8395

By: */s/ Jason Davis*
Jason Davis
State Bar No.  00793592
Santos Vargas
State Bar No. 24047026
*Attorneys for Appellee,*
*González & Associates Law Firm, Ltd.*

## CERTIFICATE OF SERVICE

I hereby certify that on December 18, 2015, a true and correct copy of this brief was forwarded in accordance with rule 9.5 of the Texas Rules of Appellate Procedure to the following counsel of record:

Jaime Peña
State Bar No. 90001988
Pena Garcia Guerrero, PLLC
900 Kerria Avenue
McAllen, Texas 78501
(956) 948-2221– phone
(956) 422-6346
jpena@pgglex.com

Beth Watkins
State Bar No. 24037675
Shannon K. Dunn
State Bar No. 24074162
Law Office of Beth Watkins
926 Chulie Drive
San Antonio, Texas 78216
(210) 225-6666– phone
(210) 225-2300– fax
Beth.Watkins@WatkinsAppeals.com
Shannon.Dunn@WatkinsAppeals.com

*/s/ Santos Vargas*
SANTOS VARGAS

# CERTIFICATE OF COMPLIANCE

I certify that this document was produced on a computer using Microsoft Word 2007 and contains 14,967 number of words, as determined by the computer software's word-count function, excluding the sections of the document listed in Texas Rule of Appellate Procedure 9.4(i)(1).

*/s/ Santos Vargas*
SANTOS VARGAS